(630 P.2d 186)

No. 51,847

HAROLD MURPHY, *Plaintiff-Appellant, Cross-Appellee,* v. CITY OF TOPEKA-SHAWNEE COUNTY DEPARTMENT OF LABOR SERVICES; BILL BYWATER; ANN NEWMAN; and ALONZO HARRISON, *Defendants-Appellees and Cross-Appellants,* v. BOARD OF COUNTY COMMISSIONERS OF SHAWNEE COUNTY, KANSAS, *et al., Third-Party Defendants-Appellees and Cross-Appellants.*

Opinion filed June 19, 1981.

*Fred W. Phelps, Jr.,* of Fred W. Phelps, Chartered, of Topeka, for the appellant

*Robert E. Duncan, II,* assistant city attorney, and *Timothy E. Paul,* deputy city attorney, of Topeka, for the appellees and cross-appellants City of Topeka-Shawnee County Department of Labor Services.

*David D. Plinsky,* of Department of Labor Services, of Topeka, for the appellees and cross-appellants Bill Bywater, Ann Newman and Alonzo Harrison.

*Donna Voth,* assistant county counselor, of Topeka, for the appellees and cross-appellants Board of County Commissioners of Shawnee County, *et al.*

Before JUSTICE HERD, presiding, SWINEHART, J., and WILLIAM M. COOK, District Judge, assigned.

COOK, J.: This is an appeal by plaintiff, Harold Murphy, a terminated employee, from the district court's dismissal of his cause of action against defendants, City of Topeka-Shawnee County Department of Labor Services, Bill Bywater, Ann Newman, and Alonzo Harrison. Also involved is a cross-appeal by defendants and third-party defendants Board of County Commissioners of Shawnee County, *et al.,* from a prior order of the trial court sanctioning a cause of action for wrongful retaliatory discharge from employment, heretofore unrecognized in this state.

Harold Murphy was employed by the Department of Labor Services (DOLS), an administrative agency of the City of Topeka. Murphy was employed in April, 1977, and allegedly sustained on-the-job injuries on June 15, 1977. Subsequent to his injury, Murphy filed a workmen's compensation claim as authorized by the Kansas Workmen's Compensation Act, K.S.A. 44-501 *et seq.* Murphy contends he was offered further employment by DOLS, through its supervisory employees, defendants Bywater, Newman and Harrison, on the condition that he withdraw his compensation claim. When Murphy refused, he claims his employment was terminated by defendants.

On January 31, 1979, Murphy filed his petition in the district court alleging he was discharged in retaliation for claiming workmen's compensation benefits against his employer, and prayed for both actual and punitive damages. Defendants filed an answer asserting the defense of governmental immunity, filed motions to dismiss and for summary judgment, and filed a third-party petition against the third-party defendants for judgment in the amount of any damage award for which defendants might subsequently be held liable under plaintiff's petition. On July 31, 1979, the trial court denied the original motion to dismiss, hold-

ing that plaintiff's petition stated a valid claim, *viz.*, retaliatory discharge for failure to withdraw his workmen's compensation claim. The court held:

"These laws [workmen's compensation] were a great social and economic step forward in this country and the Court is of the opinion that for an employer to intentionally and wrongfully fire a workman for filing a Workmen's Compensation Claim and proceeding thereon, *when said workman is able to perform his work*, is the basis for a claim in tort and is contrary to the public policy of this state. This is not to say that an employee who is injured on the job and who has a Workmen's Compensation Claim and is unable to perform the work as a result of the injury cannot be discharged."

The trial court later, however, by letter decision dated December 12, 1979, dismissed plaintiff's cause of action against all defendants. The court found that plaintiff had failed to comply with the notice requirements of K.S.A. 12-105 and since that statute was applicable to any agency of a city, his action must, therefore, be dismissed. The court also held that the individual defendants were acting within the scope of their authority when they terminated the plaintiff and his action against them must likewise fail. Plaintiff claims the court erred.

While stated differently and in varying detail by the parties, there are two primary issues to be decided in this appeal and cross-appeal: (1) Did the district court err in dismissing plaintiff's lawsuit for failure to comply with K.S.A. 12-105; and (2) does a cause of action exist in this state for an employee-at-will who is terminated by his employer for filing a workmen's compensation claim? The second question is one of first impression for this state and involves important public policy considerations.

Pursuant to the Interlocal Cooperation Act (K.S.A. 12-2901 *et seq.*), the City of Topeka and Shawnee County entered into a contract denominated "Cooperative Agreement for the Administration of Employment and Training Services." The contract provided, in part, as follows:

"The Participating Governments agree to establish a single Comprehensive Manpower Program (hereinafter referred to as the Program), serving the Program Area. To establish this Comprehensive Program, the Participating Governments hereby agree that the County of Shawnee yields its power of attorney to the City of Topeka to apply for funding under the Comprehensive Employment and Training Act (CETA) and to establish the Topeka-Shawnee County Consortium. In doing this the County of Shawnee gives, delegates, and authorizes the City of Topeka to act on its behalf in all matters as they relate to the Consortium and CETA 1973 and its amendments except that the Consortium members reserve the right of

evaluation and the decision to reprogram funds. *Responsibility for program operations is vested with the City of Topeka Department of Labor Services* (DOLS) by the designation of the Participating Governments, the City of Topeka, as the Administrative Arm of the Consortium. *The consortium shall be the prime sponsor, the Department of Labor Services shall be the administrative unit designated to operate the program.*

. . . .

"It shall be the responsibility of the City of Topeka to establish and maintain a city governmental agency responsible for the direct administration and operation of the Program. *Said administrative unit shall be known as the City of Topeka Department of Labor Services* (DOLS).

. . . .

"All staff Personnel employed by the Administrative Arm shall be employees of the City." (Emphasis supplied.)

The City of Topeka, in compliance with the contract provisions, enacted Ordinance No. 13990 which established the Department of Labor Services (DOLS) to function as the "administrative unit" as authorized and defined under the Comprehensive Employment and Training Act of 1973 (CETA). Although DOLS, because of its county-wide jurisdiction, may be known locally under the name of "City of Topeka-Shawnee County Department of Labor Services," as designated by plaintiff in his petition and summons, the department is solely an agency of the City of Topeka.

Plaintiff concedes that he failed to file a written claim with the city clerk of Topeka. K.S.A. 12-105, since repealed, provided:

"No action shall be maintained by any person or corporation against any city on account of injury to person or property unless the person or corporation injured shall within six (6) months thereafter and prior to the bringing of the suit file with the city clerk a written statement, giving the time and place of the happening of the accident or injury received, the circumstances relating thereto and a demand for settlement and payment of damages . . . ."

Plaintiff argues K.S.A. 12-105 does not apply to the present situation. He contends the statute only applies to cities and his suit, brought only against DOLS and its individual employees, is not against a city. His contention, insofar as DOLS is concerned, is without merit.

Absent authority expressly given by statute or ordinance, an agency of a city does not have the capacity to sue or to be sued as a separate entity; the city is a necessary and indispensable party to any action filed either by or against the agency. *Hubert v. Board of Public Utilities,* 162 Kan. 205, 174 P.2d 1017 (1946);

*Seely v. Board of Public Utilities,* 143 Kan. 965, 57 P.2d 471 (1936). K.S.A. 60-219 requires that any "contingently necessary" person must be joined as a party in any action and, when not joined, the district court shall order that he be made a party. In the present case the court could not order the joinder of the City of Topeka because of plaintiff's failure to comply with the notice requirements of K.S.A. 12-105. We find that the court did not err in dismissing plaintiff's action against DOLS.

The comprehensive manpower program was jointly sponsored by the City of Topeka and Shawnee County even though it was solely administered by the City. Plaintiff may have had a cause of action against the county inasmuch as DOLS was acting as the administrative agent of both governmental bodies. The notice provisions of K.S.A. 12-105 applied only to "cities" and would not have precluded an action against Shawnee County. K.S.A. 12-105a did not expand the notice requirements to other governmental units, as argued by the defendants. Plaintiff, however, did not join the county as a party defendant in his lawsuit, and such joinder is now precluded by the statute of limitations (K.S.A. 60-513).

Plaintiff would have us hold that his claim arises out of a breach of implied contract, rather than tort. K.S.A. 12-105 has application only to actions for *injury* to persons or property, *i.e.,* tort actions and not to actions on contract. *Stauffer v. City of Topeka,* 200 Kan. 287, 436 P.2d 980 (1968).

The nature of a claim, whether it sounds in contract or tort, is determined from the pleadings. In *Malone v. University of Kansas Medical Center,* 220 Kan. 371, 374, 522 P.2d 885 (1976), the court said:

"A breach of contract may be said to be a material failure of performance of a duty arising under or imposed by agreement. A tort, on the other hand, is a violation of a duty imposed by law, a wrong independent of contract. Torts can, of course, be committed by parties to a contract. The question to be determined here is whether the actions or omissions complained of constitute a violation of duties imposed by law, or of duties arising by virtue of the alleged expressed agreement between the parties."

Plaintiff's petition asserts that he was intentionally and recklessly terminated from his employment in retaliation for filing a workmen's compensation claim. He does not claim the existence of a contract of employment covering the duration of employment. His termination did not breach any contractual obligations,

either expressed or implied, presently recognized because as an employee-at-will his employment could be terminated at any time, with or without cause. If plaintiff has alleged a sufficient cause of action herein, as will be later discussed, it arises from a duty imposed by law based upon public policy preventing an employer from wrongfully discharging an employee in retaliation for filing a workmen's compensation claim. Plaintiff's action clearly sounds in tort, and the mere existence of a contractual relationship between the parties does not change the nature of his action. In *Yeager v. National Cooperative Refinery Ass'n,* 205 Kan. 504, 509, 470 P.2d 797 (1970), the court quoted the rule from 52 Am. Jur., Torts § 26, p. 379:

" 'Where a contractual relationship exists between persons and at the same time a duty is imposed by or arises out of the circumstances surrounding or attending the transaction, the breach of the duty is a tort.' "

This brings us to the individual defendants, Bywater, Newman and Harrison. They first assert that the notice requirements of K.S.A. 12-105 are also applicable to a tort action against individual officers and employees of a city. A similar assertion was rejected in *Bradford v. Mahan,* 219 Kan. 450, 453, 548 P.2d 1223 (1976), wherein the court held:

"The notice requirements of K.S.A. 12-105 apply only to actions for injury to person or property against a municipality and are not a condition precedent to bringing an action against a police officer, even though said officer was engaged in the performance of a governmental function."

Even though *Bradford* involved an action against police officers as opposed to administrative officers in the instant case, we see no reason to draw a distinction between classes of city employees. K.S.A. 12-105 is clearly intended to apply only to a city and not to its individual officers and employees.

The individual defendants also argue that the doctrine of governmental immunity precludes plaintiff's cause of action. They contend that the City of Topeka is immune from suit for negligence and misconduct of its officers and employees while engaged in the performance of their duties and that they should share in that immunity. Defendants are correct in stating that individual officers and employees of an immune governmental entity share that immunity when acting within the scope of their employment. Such was the common-law rule which has been incorporated into the Kansas Tort Claims Act (K.S.A. 1980 Supp.

75-6104). However, inasmuch as we have already held that plaintiff's action against both the City and its agency must fail because of the notice requirements of K.S.A. 12-105, it is not now necessary for us to determine whether the City of Topeka, along with DOLS, were afforded protection against plaintiff's cause of action under the theory of governmental immunity. Even assuming arguendo that such immunity did exist, that immunity would not extend to the individual defendants based upon the allegations of plaintiff's petition. The common-law rule recognized an exception to the immunity of public officers:

"The immunity of the sovereign from suit does not protect public officers from personal liability for their wrongful acts in excess of their official authority . . . since the acts of officials which are not legally authorized or which exceed or abuse their authority or discretion are not acts of the state . . . ." 72 Am. Jur. 2d, States, Etc. § 115, p. 504.

This exception has been recognized in Kansas in cases holding that officers were not liable "in the absence of malice," *Kretchmar v. City of Atchison,* 133 Kan. 198, 204, 299 Pac. 621 (1931); "in the absence of malice, oppression in office or willful misconduct," *Hicks v. Davis,* 100 Kan. 4, Syl., 163 Pac. 799 (1917); for acts unless "wholly outside their jurisdiction," *Evans v. Marsh,* 158 Kan. 43, 47, 145 P.2d 140 (1944); or "in the absence of malice, oppression, wantonness, or willful misconduct," *Commercial Union Ins. Co. v. City of Wichita,* 217 Kan. 44, Syl. ¶ 7, 536 P.2d 54 (1975).

It is not for this court to determine whether the individual defendants have been guilty of any of the exceptions noted above. Plaintiff has, however, alleged willful and wanton misconduct and the allegations of his petition, on a motion to dismiss, must be taken in the light most favorable to him. The question always for the trial court's determination is "whether in the light most favorable to plaintiff, and with every doubt resolved in his favor, the petition states any valid claim for relief. Dismissal is justified only when the allegations of the petition clearly demonstrate plaintiff does not have a claim." *Weil & Associates v. Urban Renewal Agency,* 206 Kan. 405, Syl. ¶ 2, 479 P.2d 875 (1971). We find the trial court erred in dismissing plaintiff's action as to defendants Bywater, Newman and Harrison. Since these defendants are sued as individuals acting in abuse of their authority, the

City is neither an indispensable nor proper party to plaintiff's action against them.

We now turn to the second issue: Does a valid cause of action exist? To so hold, we must find that the discharge of an employee-at-will in retaliation for filing a claim under the Workmen's Compensation Act is a cause for which an action in tort may lie in Kansas. Cross-appellants argue that few jurisdictions have so held, in what they characterize as a "small band of renegade opinions."

It is settled law in Kansas "that in the absence of a contract, expressed or implied, between an employee and his employer covering the duration of employment, the employment is terminable at the will of either party." *Johnston v. Farmers Alliance Mutual Ins. Co.,* 218 Kan. 543, 546, 545 P.2d 312 (1976).

The Supreme Court of Indiana, in *Frampton v. Central Ind. Gas Co.,* 260 Ind. 249, 297 N.E.2d 425 (1973), supplied the first judicial recognition that discharge of an employee in retaliation for filing a workmen's compensation claim is actionable at law and may support an award of both actual and punitive damages. Commenting on the case, Vol. 2A Larson's Workmen's Compensation Law § 68.36, p. 68 (1980 Supp.), states:

"It is odd that such a decision was so long in coming. Perhaps the explanation may lie in the fact that the conduct involved is so contemptible that a [*sic*] few modern employers would be willing to risk the opprobrium of being found in such a posture."

We would add that such instances may also be rare because employers have simply assumed such conduct was either illegal, actionable or both.

Cross-appellants adopt the Illinois Fourth District Court of Appeal's argument in *Kelsay v. Motorola, Inc.,* 51 Ill. App. 3d 1016, 366 N.E.2d 1141 (1977), which denied recognition to a cause of action for retaliatory discharge. As they note, however, the Illinois Supreme Court reversed that decision (74 Ill. 2d 172, 384 N.E.2d 353 [1978]), holding that the protection afforded by workmen's compensation laws was in furtherance of sound public policy, and an employee had a civil tort action against an employer who discharged her for filing a claim.

We believe the public policy argument has merit. The Workmen's Compensation Act provides efficient remedies and protection for employees, and is designed to promote the welfare of the

people in this state. It is the exclusive remedy afforded the injured employee, regardless of the nature of the employer's negligence. To allow an employer to coerce employees in the free exercise of their rights under the act would substantially subvert the purpose of the act.

We have given careful consideration to cross-appellants' argument that the Kansas legislature has twice considered amendments to the Workmen's Compensation Act which specifically would have allowed the type of action here affirmed and, by failure to adopt those amendments, it has clearly expressed its intention that such an action should not be recognized in this state. Cross-appellants' argument is two-pronged. First, it is argued that the failure to adopt the amendments (Senate Bill No. 153 in 1961 and House Bill No. 221 in 1963) is persuasive legislative history as to the legislature's intention. We disagree. While failure to enact may in some cases be a strong indication of legislative intent, it is not the most persuasive, as the legislature may positively declare that such actions shall not lie in this state. In the case of the two proposed amendments, we have before us no evidence of the legislature's reasoning in failing to adopt—no arguments, no committee hearing records, no statements of proponents or opponents. Both proposed amendments were lengthy compilations, going considerably farther than simply allowing the cause of action here considered. The proposals may well have failed for reasons altogether apart from the asserted cause of action. Simple evidence of legislative inaction rather than action cannot defeat the public policy considerations we find here controlling.

The second prong of the legislative inaction argument by cross-appellants attacks the district court's jurisdiction in this matter. K.S.A. 1980 Supp. 20-301 grants the district court jurisdiction over "all matters, both civil and criminal, unless otherwise provided by law . . . ." Cross-appellants argue that by its consideration of the above-mentioned amendments, and its failure to adopt the same, the legislature has "taken specific and direct action by declining to enact the statutory cause of action," and has thus "otherwise provided by law" deprived the district court of jurisdiction. This argument, however, turns the plain meaning of the statutory language completely around. For the

legislature to fail to act on a matter is clearly not the same as for it to take positive action to exclude jurisdiction.

For the reasons stated herein, we find that plaintiff has alleged a valid cause of action for retaliatory discharge and his petition as to the defendants Bywater, Newman and Harrison should not have been dismissed by the district court. However, inasmuch as this is the first recognition of such a cause by a Kansas court of appellate jurisdiction, we believe the allowance of punitive damages in this case would be extremely unjust. One of the primary purposes for the imposition of punitive damages is to deter like wrongs from being committed in the future. Until the present pronouncement, it was not clearly known to defendants, or any other employer in this state, that a retaliatory discharge would give rise to an action for damages. Therefore, defendants' conduct in the present case does not justify the imposition of punitive damages.

We reverse and remand for action consistent with this opinion, with the proviso that, in the event plaintiff prevails in his claim against the individual defendants, no punitive damages be awarded. Punitive damages may, however, be awarded in any appropriate case that arises subsequent to this opinion.