497 So.2d 1107 (1986)
Vonnie Carnell JONES
v.
Ronald ETHRIDGE, Sr.,[1] et al.
84-1025.
Supreme Court of Alabama.
November 7, 1986.
Stephen B. Griffin, Birmingham, for appellant.
Marcia W. Wright of Sadler, Sullivan, Sharp & Stutts, Birmingham, for appellees.
PER CURIAM.
Affirmed on the authority of Williams v. Killough, 474 So.2d 680 (Ala.1985); Self v. Bennett, 474 So.2d 673 (Ala.1985); Hinrichs v. Tranquilaire Hospital, 352 So.2d 1130 (Ala.1977).
AFFIRMED.
TORBERT, C.J., and MADDOX, ALMON, SHORES, HOUSTON and STEAGALL, JJ., concur.
JONES, BEATTY and ADAMS, JJ., dissent.
JONES, Justice (dissenting):
Appellant, claiming wrongful discharge from employment based on the refusal of her employer's demand that she commit a criminal act, asks us to revisit Hinrichs v. Tranquilaire Hospital, 352 So.2d 1130 (Ala.1977). Pursuant to the public policy considerations expressed by the legislature in Code 1975, § 12-16-8.1 and § 25-5-11.1, this Court should now reverse its holding in Tranquilaire.
Following Tranquilaire, the Court in Bender Ship Repair, Inc. v. Stevens, 379 So.2d 594 (Ala.1980), upheld the right of an employer to discharge an employee for his responding to a subpoena for jury duty. Thereafter, in Meeks v. Opp Cotton Mills, Inc., 459 So.2d 814 (Ala.1984), we again upheld an employer's right to fire an employee for the sole reason that he brought a workmen's compensation claim for job-related injuries against his employer. As in the instant case, the plaintiff in each of those cases was an employee at will, i.e., one not covered by a contract of employment for a fixed term or under which the employee could be terminated only "for cause." For an in-depth treatment of this subject, see "The Employment at Will Rule," 31 Ala.L.Rev. 421 (1980); "Meeks v. Opp Cotton Mills: The Alabama Supreme Court Refuses to Modify the Employment at Will Rule," 36 Ala.L.Rev. 1039 (1985).
Responding to Bender Ship Repair and Meeks, the legislature reacted swiftly and decisively by enacting § 12-16-8.1 and § 25-5-11.1. Section 12-16-8.1 provides:
"(a) No employer in this state may discharge any employee solely because he serves on any jury empanelled under any state or federal statute; provided, however, that the employee reports for work on his next regularly scheduled hour after being dismissed from any jury.
"(b) Any employee who is so discharged shall have a cause of action against the employer for said discharge in any court of competent jurisdiction in this state and shall be entitled to recover both actual and punitive damages.
"(c) The provisions of this section are supplemental to any statutes, existing or to be enacted in the future, that are designed to protect and safeguard a citizen's right and duty to serve on a lawful jury, and the provisions of this section shall not repeal or supersede the provisions of any law not directly inconsistent herewith."
Section 25-5-11.1 states:
"No employee shall be terminated by an employer solely because the employee has instituted or maintained any action against the employer to recover worker's compensation benefits under this chapter or solely because the employee has filed *1108 a written notice of violation of a safety rule pursuant to subdivision (c)(4) of section 25-5-11."
Although these two statutes address separate and distinct grounds for the firing of "at-will" employees, they represent but a single expression of public policy. Founded upon one's fundamental duty to obey the law and the equally fundamental right to pursue a legal remedy, public policy mandates that an "at-will" employee who exercises a lawful right to pursue a statutory worker's remedy, or who responds to a legal duty, cannot be fired for those reasons alone. The concept of public policy, as a basis for shaping the law, was defined in Maddox v. Fuller, 233 Ala. 662, 667, 173 So. 12, 16 (1937):
"The true test ... is whether the public interest is injuriously affected in such substantial manner that private rights and interests should yield to those of the public."
No judicial extension of this legislatively expressed public policy is required for this Court's application of the same policy considerations to the instant facts. Indeed, it is totally rational to conclude that prohibiting an employer from forcing an employee to disobey the law as a condition of employment is necessarily embraced within the same public policy as the prohibition against the firing of an employee for exercising a lawful right or performing a legal duty. Surely, for comparative purposes, the right not to commit a crime is an even stronger reason for invoking the proscription against firing an employee, for in this case there is an additional element of the employer's criminal conduct. For this Court to persist in its adherence to Tranquilaire is an affront to the legislative intent clearly expressed in § 12-16-8.1 and § 25-5-11.1.
To recognize and apply the public policy evidenced by these two recently enacted statutes would not be to interpret these Acts as changing the general common law rule with respect to the employer's right to fire an at-will employee. To be sure, the codification of this public policy exception lends credibility to the retention of the general rule and its application.
I would further hold that a claim for wrongful, retaliatory discharge of an employee at will, brought pursuant to this public policy exception, sounds in tort, for which compensatory damages are recoverable. Ordinarily, because such a retaliatory discharge would be an intentional tort, punitive damages should also be recoverable. I am impressed, however, with the reasoning of Murphy v. City of Topeka-Shawnee County Dept. of Labor Services, 6 Kan.App.2d 488, 630 P.2d 186 (1981), in which the Kansas Court of Appeals said:
"[I]nasmuch as this is the first recognition of such a cause by a Kansas court of appellate jurisdiction, we believe the allowance of punitive damages in this case would be extremely unjust. One of the primary purposes for the imposition of punitive damages is to deter like wrongs from being committed in the future. Until the present pronouncement, it was not clearly known to defendants, or any other employer in this state, that a retaliatory discharge would give rise to an action for damages. Therefore, defendants' conduct in the present case does not justify the imposition of punitive damages." 6 Kan.App.2d at 497, 630 P.2d 186 at 193.
Perhaps, now, the legislature will again react, swiftly and decisively, to expressly provide an employee a remedy where the employer fires the employee for refusing to commit a criminal act.
BEATTY and ADAMS, JJ., concur.
NOTES
[1] Although the notice of appeal indicates that this defendant's name is spelled "Etheridge," a close review of the record indicates that the correct spelling is "Ethridge."