**Guillermo SANJUAN, Plaintiff,**

v.

**IBP, INC., Defendant.**

**Civil Action No. 94–1541–DES.**

United States District Court,
D. Kansas.

Feb. 7, 1996.

David O. Alegria, McCullough, Wareheim & La Bunker, P.A., Topeka, KS, for plaintiff.

Jack Focht, Kenneth G. Gale, Focht, Hughey & Calvert, Wichita, KS, for defendant.

## MEMORANDUM AND ORDER

SAFFELS, District Judge.

This matter is before the court on the defendant's motion for summary judgment (Doc. 30)

## I. BACKGROUND

The plaintiff, Guillermo Sanjuan, began his second period of employment with the defendant, IBP, Inc. ("IBP") on May 29, 1991. Not quite a year later, on May 18, 1992, the plaintiff sustained a work-related injury to his right foot.

Two months later, on July 25, 1992, the plaintiff sustained work-related injuries to his upper extremities as a result of repetitive motion overuse causing pain and soreness in his left arm, neck and back. As a result of the plaintiff's work-related injuries, he exercised his rights under the Kansas Workers' Compensation Act, Kan.Stat.Ann. § 44–501 et seq.

The defendant's company physician, Dr. Zeller, prescribed light duty work with restrictions for the plaintiff to perform clerical tasks with minimal use of his left arm.

From July 25, 1992, until December 23, 1992, being aware of the plaintiff's physical problems, the defendant assigned the plaintiff to several positions within the company, including driving cattle with cattle prods and blowing hair off hocks.

Throughout this period, the plaintiff was issued several written warnings by the defendant for poor job performance, unexcused absences, and violating a company safety policy. On December 23, 1992, IBP fired the plaintiff for not driving cattle properly and causing downtime on that date.

The plaintiff alleges that the defendant's reasons for discharging him were but a pretext so as to maintain a discreet company policy of selectively and discriminatorily terminating employees who exercise statutory

rights under the Kansas Workers' Compensation Act, Kan.Stat.Ann. § 44–501 *et seq.*

## II. *DISCUSSION*

A court shall render summary judgment upon a showing that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law. Fed. R.Civ.P. 56(c). The rule provides that "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–48, 106 S.Ct. 2505, 2509–10, 91 L.Ed.2d 202 (1985).

The substantive law identifies which facts are material. *Id.* at 248, 106 S.Ct. at 2510. A dispute over a material fact is genuine when the evidence is such that a reasonable jury could find for the nonmovant. *Id.* "Only disputes over facts that might properly affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Id.*

The movant has the initial burden of showing the absence of a genuine issue of material fact. *Shapolia v. Los Alamos Nat'l Lab.,* 992 F.2d 1033, 1036 (10th Cir.1993). The movant may discharge its burden "by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1985). The movant need not negate the nonmovant's claim. *Id.* at 323, 106 S.Ct. at 2552–53.

Once the movant makes a properly supported motion, the nonmovant must do more than merely show there is some metaphysical doubt as to the material facts. *Matsushita Elec. Indus. Co. v. Zenith Radio,* 475 U.S. 574, 586, 106 S.Ct. 1348, 1355–56, 89 L.Ed.2d 538 (1985). The nonmovant must go beyond the pleadings and, by affidavits or depositions, answers to interrogatories, and admissions on file, designate specific facts showing there is a genuine issue for trial. *Celotex,* 477 U.S. at 324, 106 S.Ct. at 2553 (interpreting Fed.R.Civ.P. 56(e)). Rule 56(c) requires the court to enter summary judgment against a nonmovant who fails to make a showing sufficient to establish the existence of an essential element to that party's case, and on which that party will bear the burden of proof. *Id.* at 322, 106 S.Ct. at 2552. Such a complete failure of proof on an essential element of the nonmovant's case renders all other facts immaterial. *Id.* at 323, 106 S.Ct. at 2552–53.

A court must view the facts in the light most favorable to the nonmovant and allow the nonmovant the benefit of all reasonable inferences to be drawn from the evidence. *See, e.g., United States v. O'Block,* 788 F.2d 1433, 1435 (10th Cir.1986) (stating that "[t]he court must consider factual inferences tending to show triable issues in the light most favorable to the existence of those issues").

The court's function is not to weigh the evidence, but merely to determine whether there is sufficient evidence favoring the nonmovant for a finder of fact to return a verdict in that party's favor. *Anderson,* 477 U.S. at 249, 106 S.Ct. at 2510–11. Essentially, the court performs the threshold inquiry of determining whether a trial is necessary. *Id.* at 250, 106 S.Ct. at 2511.

### A. *Plaintiff's retaliatory discharge claim*

 Kansas generally follows the employment at will doctrine. Under this doctrine, absent a contract to the contrary, a person's employment is considered terminable at the will of either the employer or the employee. *Johnson v. National Beef Packing Co.,* 220 Kan. 52, 551 P.2d 779, 781 (1976). Kansas recognizes, however, certain exceptions to the general rule of employment at will. One such exception prohibits employers from discharging employees for exercising their rights under the Worker's Compensation Act. *Murphy v. City of Topeka,* 6 Kan.App.2d 488, 630 P.2d 186, 193 (1981). The cause of action for retaliatory discharge extends to employees who are fired for being absent as the result of work-related injuries. *Ortega v. IBP, Inc.,* 1994 WL 373887, at *6 (D.Kan. July 1, 1994). An employer may, however, discharge an injured employee pursuant to a neutral attendance policy. *Ray-*

*mond v. Archer Daniels Midland Co.*, 762 F.Supp. 901, 904–05 (D.Kan.1991).

In order to establish a prima facie case of retaliatory discharge, a plaintiff must show that (1) he filed a claim for workers' compensation benefits, or sustained an injury for which he might assert a claim for such benefits; (2) his employer had knowledge of the claim, or of the fact that he had sustained a work-related injury for which he might file a claim; (3) his employer terminated his employment; and (4) a causal connection existed between the protected activity or injury and the termination. *Ortega*, 1994 WL 373887, at *6.

Once a plaintiff presents a prima facie case, the burden of production shifts to the employer to rebut the inference that its motives in discharging the plaintiff were retaliatory. *Id.* at 1194. The defendant must articulate a legitimate, non-retaliatory reason for the plaintiff's discharge. *Id.* If the defendant succeeds in rebutting the prima facie case, the plaintiff must continue with the burden by proving by clear and convincing evidence that her employer acted with retaliatory intent. *See St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 506–07, 113 S.Ct. 2742, 2747 (1993).

The issues in this case revolve around the last element of retaliatory discharge, i.e., whether there exists a causal connection between the plaintiff's work injuries and/or workers' compensation claims and the termination of his employment.

The plaintiff contends that as a result of his request for workers' compensation benefits, his work related injuries and the anticipated cost of his medical treatment to defendant, that defendant terminated plaintiff's employment with IBP, Inc. on December 23, 1992.

IBP counters that it terminated the defendant's employment due to poor job performance and that IBP followed all proper procedures in discharging the plaintiff.

The critical issue then is whether the defendant acted with retaliatory intent when it terminated the plaintiff's employment. An employer will rarely admit to retaliatory motives in firing an employee. Retaliatory discharge cases, therefore, must generally be proven by circumstantial evidence. *See Chaparro v. IBP, Inc.*, 873 F.Supp. 1465, 1472 (D.Kan.1995).

In the memorandum supporting its motion for summary judgment, the defendant sets forth 28 paragraphs of what it characterizes as uncontroverted facts. Several of those paragraphs are grist for contention and illuminate the differences between the parties in how events and statements are perceived.

In paragraphs five and eight, the defendant maintains that when the plaintiff was on light duty, he was never given a job to do which was against his physical restrictions as prescribed by the company physician, Dr. Zeller. This is an important assertion because if true then it undermines the plaintiff's position that he was assigned tasks beyond his physical abilities and was issued warnings based on poor performance of those tasks. The defendant cites the plaintiff's deposition wherein the plaintiff says that—after going on light duty—he was never given a job to do which was against his restrictions. Also, the light duty job of "blowing hocks" was something the plaintiff says he could do with his injury and was not difficult for the plaintiff.

The record includes a Medical and Work Related Injury Report dated September 1, 1992. In that report, Dr. Zeller issued a restriction against the defendant from assigning the plaintiff to tasks requiring him to use his left hand and arm to reach above his shoulder. By this time the defendant was no longer blowing hocks.

Nine days earlier, on August 21, 1992, the plaintiff had been blowing hair off hocks which, according to Ron Christy, a supervisory employee of IBP, is performed at shoulder level. There are no medical records in the file showing that the plaintiff was restricted from reaching above his shoulder as of August 21, 1992. Given that the plaintiff said blowing hocks was not difficult for him and there is no document showing a restriction was placed on the plaintiff as of August 21, 1992, the defendant's assertion that the plain-

tiff was never assigned to a task which was against his restrictions may be valid.

However, while there is no document in the record contravening that assertion the complaint states that Dr. Zeller prescribed light duty work on July 25, 1992, with restrictions for Mr. Sanjuan to perform clerical tasks with minimal use of his left arm. Further, Mr. Christy, a supervisory employee at IBP, states that shortly after August 22, 1992, he became aware that the plaintiff had a restriction against work above shoulder level. Christy further stated that he removed the plaintiff from the job of blowing hocks because it was not meeting the plaintiff's restrictions. Mr. Christy stated that— upon review of IBP's records—he was surprised the plaintiff had been assigned the job of blowing hocks in violation of his restriction.

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

Fed.R.Civ.P. 56(c)

As noted, the plaintiff's complaint together with Mr. Christy's testimony indicate there was a medical report in effect on August 21, 1992, restricting the type of work to which the plaintiff was to be assigned. Viewing these facts in the light most favorable to the plaintiff and allowing the plaintiff the benefit of all reasonable inferences to be drawn from this evidence, it follows that a reasonable jury could find there was a restriction in place and that IBP did assign the plaintiff tasks beyond his physical capabilities, even though the plaintiff himself did not complain of any pain and did not know this task may have been a violation of the medical restrictions set by Dr. Zeller.

As to whether blowing hocks actually was a violation of the plaintiff's restriction is a question of fact and properly left for a jury to decide. Mr. Christy indicated that blowing hocks is performed at shoulder level, which may or may not at times include above the shoulder activity. A demonstration of blowing hocks would seem in order to address the issue of whether that activity violated the plaintiff's medical restrictions.

### B. *Was the plaintiff properly trained?*

■ If the plaintiff can show that he was not properly trained for tasks which he ultimately was cited for performing poorly, a jury might decide that IBP somehow conspired against the plaintiff, i.e., by a showing there was some concerted effort by IBP to assign the plaintiff tasks he could not perform. Upon failure to do so, the defendant could write poor performance evaluations to justify the plaintiff's ultimate dismissal.

In paragraph ten of its memorandum in support of its motion, the defendant asserts that the plaintiff received enough training to perform light duty jobs, none of which were hard. In support thereof, the defendant cites the plaintiff's deposition wherein the plaintiff eventually says that five minutes of training for the light duty jobs was enough training.

On December 23, 1992, the plaintiff was fired after shocking at least one cow (and as many as three) too hard with a cattle prod, causing the cow to fall and resulting in downtime at the slaughterhouse. Mr. Randy Kruse, one of the supervisors for the defendant, says that he had previously "counseled" the plaintiff about the correct way to drive cattle. According to Mr. Kruse this counseling was necessary because the plaintiff had been overshocking the cattle.

Did Mr. Kruse's counseling rise to the level of adequate training? According to Mr. Christy, to what degree you electrically prod a bovine comes with experience after one has done the job for awhile. Mr. Christy does not state how much experience is required.

Perhaps most revealing as to whether there was adequate training is the fact that Spanish is the plaintiff's primary language and the plaintiff has a marginal grasp of the English language. Mr. Kruse does not speak Spanish and without the benefit of an interpreter, his counseling may have had little effect on the plaintiff's understanding of the proper way in which to prod the cows.

In its reply, the defendant reiterates that the plaintiff's testimony was that he did receive adequate training for his light duty jobs. Further, according to the defendant, the plaintiff cannot prove at trial a contention which he has "unequivocally" eliminated by his own testimony.

A reading of the plaintiff's testimony demonstrates quite a bit of equivocation in answering whether he had proper training in his light duty jobs (including prodding cows). In fact, it took a series of 12 questions, many of them repeated but answered differently, before the plaintiff finally answered "yes" as to whether five minutes of training was adequate for each of the light duty jobs he was assigned. The plaintiff's varied responses indicate possible confusion on his part likely due to not understanding English all that well.

If that is the case, then a jury might also decide that Mr. Kruse's counseling of the plaintiff as to how to prod a cow may not have been entirely understood by the plaintiff. Hence, his training may have been deficient. The court finds that this is an issue of fact a jury must address.

### C. Does the chronology of events show a retaliatory scheme?

As previously noted, IBP's physician, Dr. Zeller examined and set forth restrictions pertaining to the plaintiff's conditions on September 1, 1992. In his complaint, the plaintiff states that on July 25, 1992, Dr. Zeller prescribed light duty work with restrictions pertaining to the plaintiff's left arm. Given those facts, it is preposterous for the plaintiff—in his response—to declare that his first doctor's appointment for work-related injuries was one month before he was fired on December 23, 1992.

Nevertheless, the record contains enough evidence to require that a jury decide whether there was a retaliation scheme by the defendant against the plaintiff. Most conspicuous is the fact that prior to his on-the-job injuries, the plaintiff had never been written up for poor job performance (he had received quite a few warnings for absentee-ism). From the time the plaintiff injured himself until the day he was fired, he received eight disciplinary notices warning him of poor job performance.

Ordinarily the prima facie case must, in the nature of things, be shown by circumstantial evidence, since the employer is not apt to announce retaliation as his motive. Proximity in time between the claim and the firing is a typical beginning-point, coupled with evidence of satisfactory work performance and supervisory evaluations. *Marinhagen v. Boster, Inc.*, 840 P.2d 534, 540 (1992) (quoting Arthur Larson, 2A *Workmen's Compensation Law* § 68.36(c) (1992)).

In the plaintiff's deposition he states that one of his supervisors, Randy Kruse, complained to him about going to see a doctor regarding the plaintiff's soreness in his shoulder and in general yelled at the plaintiff all the time. Also according to the plaintiff, another supervisor, Mr. Carrera, yelled at the plaintiff, "Why don't you go back to your job?" The plaintiff further testified that Mr. Christy—on more than five occasions—questioned the plaintiff as to why the plaintiff was going to see a doctor. The plaintiff quoted Mr. Christy as stating twice: "To avoid problems, go back to your job that you had."

The fact that the plaintiff had never been cited for poor work performance prior to his injuries, along with his statements that several of his supervisors questioned him as to why he was seeing a physician, create a fact question for a jury to decide, i.e., whether there was a course of retaliation against the plaintiff for seeking workers' compensation benefits.

Based on the foregoing evidence, there is a genuine issue as to whether the defendant discharged the plaintiff for his work injuries and summary judgment as to the plaintiff's retaliatory discharge claim is denied.

### D. Plaintiff's punitive damages claim

Section 60–3702(c) of the Kansas statutes provides that "[i]n any civil action where claims for exemplary or punitive damages are included, the plaintiff shall have the burden of proving, by clear and convincing evidence in the initial phase of the trial, that

the defendant acted toward the plaintiff with willful conduct, wanton conduct, fraud or malice." Kan.Stat.Ann. § 60–3702(c) is substantive law, and therefore applicable in diversity cases. *Whittenburg v. L.J. Holding Co.*, 830 F.Supp. 557, 565 n. 9 (D.Kan.1993).

 In Count II of his complaint, the plaintiff seeks punitive damages from the defendant, alleging that the defendant's retaliatory conduct was oppressive, malicious and fraudulent. The defendant maintains that the plaintiff has failed to offer any evidence meriting punitive damages. To support its position, the defendant cites a series of warnings issued to the plaintiff by various supervisors. Those warnings, according to the defendant, evidence the plaintiff's unsatisfactory work performance, thereby providing grounds for and justifying his dismissal. The defendant further contends there is no evidence of a conspiracy to fire the plaintiff nor general hostility by IBP supervisors toward the plaintiff.

Contrary to these assertions, the court finds that the issuance of warnings to the plaintiff may be interpreted by a jury as contrivance for ultimately firing the plaintiff. Especially considering that the defendant had never been cited for poor work performance prior to his filing for workers' compensation benefits. Should a jury believe the warnings given to the plaintiff were but canards for discharging him, that could be indicative of wilful and/or malicious behavior.

Wilful conduct is defined in PIK Civ.2d 3.02 as follows: "An act performed with a designed purpose or intent on the part of a person to do wrong or to cause an injury to another is a willful act."

Malicious conduct is defined in PIK Civ.2d 3.04 as follows: Malice is a state of mind characterized by an intent to do a harmful act without reasonable justification or excuse.

In his deposition, the plaintiff stated that one of his supervisors complained to him about the plaintiff going to see a doctor and in general yelled at him on a regular basis. Another supervisor yelled at the plaintiff badgering him by asking "Why don't you go back to your job?" Mr. Christy was apparently even less subtle in suggesting to the defendant that there would be problems if the plaintiff did not return to the job he previously had.

In light of these allegations, the court finds that there exist material issues of fact as to whether punitive damages would be appropriate in this case, and therefore denies the defendant's motion for summary judgment on Count II of the plaintiff's complaint.

**IT IS THEREFORE BY THE COURT ORDERED** that defendant's motion for summary judgment (Doc. 30) is denied.

**IT IS FURTHER ORDERED** that defendant's motion to file exhibit and correct footnote (Doc. 39) is granted.