NOT DESIGNATED FOR PUBLICATION

No. 127,348

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

BONNIE TODD,
*Appellant*,

v.

SEDGWICK COUNTY EMERGENCY MEDICAL SERVICES and COREY BRAZIL,
*Appellees*.

MEMORANDUM OPINION

Appeal from Sedgwick District Court; DEBORAH MITCHELL, judge. Oral argument held December 11, 2024. Opinion filed January 24, 2025. Affirmed.

*Andrew S. LeRoy*, of Bautista LeRoy LLC, of Kansas City, Missouri, for appellant.

*Jerry D. Hawkins*, of Hite, Fanning & Honeyman L.L.P., of Wichita, for appellees.

Before ATCHESON, P.J., CLINE and PICKERING, JJ.

PER CURIAM: Bonnie Todd appeals the dismissal of her lawsuit against Sedgwick County Emergency Medical Services and Corey Brazil (Defendants) under the Kansas Tort Claims Act (KTCA) K.S.A. 75-6101 et seq. K.S.A. 12-105b(d) requires a person bringing a KTCA claim against a municipality or employee of a municipality to file written notice of the claim "with the clerk or governing body of the municipality." Todd sent written notice of her claim to the Sedgwick County Counselor. Since the Sedgwick County Board of Commissioners (the Board) did not delegate its authority to receive K.S.A. 12-105b notice to its County Counselor, we affirm the district court's summary

1

judgment decision dismissing Todd's case and denying Todd's motion to join the Board for lack of jurisdiction.

## FACTUAL AND PROCEDURAL BACKGROUND

Around July 5, 2020, Bonnie Todd suffered a fall that caused Sedgwick County Emergency Medical Services (EMS) to be called to her residence. Corey Brazil, a paramedic, attempted to lift Todd using an extremity lift, during which Brazil heard a loud "'pop'" from Todd's right arm. Sedgwick County EMS transported Todd to Wesley Medical Center where she was diagnosed with a humerus fracture.

In the following months, Todd's counsel sent a demand letter to two different representatives of Sedgwick County EMS attempting to resolve Todd's claim. On March 11, 2021, Crystal Andreen, a claims specialist for Sedgwick County, emailed Todd's counsel, stating:

> "I received your voicemail regarding your client Bonnie Todd. I have forwarded it to the County Counselor's office to see if they have received anything. Usually once someone hires counsel I no longer handle the claims but let me see what I can find out. It might be next week before I get back to you as we are all working remotely."

When Andreen received a copy of the demand letter from Todd's counsel, she told him she forwarded the letter to the County Counselor's Office.

Todd's counsel sent a second letter dated March 22, 2021, to Dr. John Gallagher of Sedgwick County EMS and Andreen. The letter intended to provide notice of claims under K.S.A. 12-105b. Counsel informed Gallagher and Andreen that Todd suffered injuries "as a result of Sedgwick County EMS's actions," and Todd would resolve the matter for $750,000. A copy of the March 22, 2021 letter was sent by certified mail to

Mike Pepoon, the Sedgwick County Counselor, and received by Pepoon's office on March 29, 2021.

On August 5, 2021, Todd sued Defendants under the KTCA for negligence, seeking damages in excess of $75,000. She alleged Sedgwick County EMS was a governmental organization organized under Kansas law, and Brazil was an employee of Sedgwick County EMS. She also stated she "provided Defendants and the Circuit Clerk of Sedgwick County, Notice of Claim on or about March 29, 2021. Therefore, in accordance with the [KTCA], suit is proper 120 days after such notice."

Defendants answered Todd's complaint, admitting some allegations and denying others. They agreed Brazil was an employee of Sedgwick County but did not admit he was an employee of "Sedwick County EMS." And they proffered several defenses, including that Todd failed to comply with K.S.A. 12-105b and that the court lacked subject matter jurisdiction.

The case then entered the discovery phase with a cutoff date of May 1, 2023. The parties were given a May 12, 2023 deadline to file dispositive motions. Defendants moved for summary judgment on May 3, 2023. They argued the proper defendant is not Sedgwick County EMS, but the Board, and consequently Todd should have filed a notice of claim under K.S.A. 12-105b with the Sedgwick County Clerk or the Board. Since Todd failed to comply with K.S.A. 12-105b(d), according to Defendants, the court lacked subject matter jurisdiction to hear the case.

Todd responded to Defendants' motion for summary judgment and simultaneously sought leave to file a motion of joinder under K.S.A. 2020 Supp. 60-219. She argued the Board delegated its role to receive notice of "all claims filed pursuant to K.S.A. 12-105b" under Resolution 039-2018 (Resolution). She requested to join the Board as a necessary party to the suit. In the same motion, Todd also moved to conduct discovery under K.S.A.

2020 Supp. 60-256(f) "regarding the role of the County Counselor in managing the claims under K.S.A. 12-105b."

The district court heard the motion on November 2, 2023. It found that under *Myers v. Board of Jackson County Comm'rs*, 280 Kan 869, 127 P.3d 319 (2006), Todd failed to serve proper notice under K.S.A. 12-105b. It further found Sedgwick County EMS is a department of Sedgwick County and thus the KTCA "requires that the Board of County Commissioners be sued, and that serving EMS or Mr. Brazil does not constitute service." This appeal followed.

REVIEW OF TODD'S APPELLATE CHALLENGES

I. *Did the district court err in granting Defendants' summary judgment motion?*

Todd argues the district court incorrectly concluded that her notice of claim failed to comply with K.S.A. 12-105b(d)'s requirements. In short, she believes she complied with K.S.A. 12-105b(d)'s requirements because she believes the Board delegated "authority to receive K.S.A.12-105b notices on behalf of the Board" and "charge and control over any related settlements or litigation" to the County Counselor.

A. *Standard of review*

An appellate court reviews a district court's decision to grant or deny a summary judgment motion de novo. *First Security Bank v. Buehne*, 314 Kan. 507, 510, 501 P.3d 362 (2021). The Kansas Supreme Court has observed:

> "'Summary judgment is appropriate when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. The trial court is required to resolve all facts and inferences which may

4

reasonably be drawn from the evidence in favor of the party against whom the ruling is sought. When opposing a motion for summary judgment, an adverse party must come forward with evidence to establish a dispute as to a material fact. In order to preclude summary judgment, the facts subject to the dispute must be material to the conclusive issues in the case. On appeal, we apply the same rules and when we find reasonable minds could differ as to the conclusions drawn from the evidence, summary judgment must be denied.'" 314 Kan. at 510.

Statutory interpretation and construction are reviewed on appeal de novo. *Scott v. Hughes*, 294 Kan. 403, Syl. ¶ 3, 275 P.3d 890 (2012).

B. *The Board did not delegate authority to serve K.S.A. 12-105b(d)(1) notice to the County Counselor.*

The KTCA waives governmental immunity "for damages caused by the negligent or wrongful act or omission of any of its employees while acting within the scope of their employment under circumstances where the governmental entity, if a private person, would be liable under the laws of this state." K.S.A. 75-6103(a).

Under K.S.A. 12-105b, if a person has a claim against a municipality or employee of a municipality which could give rise to an action under the KTCA, the person must file written notice of the claim. That "notice shall be filed with the clerk or governing body of the municipality." K.S.A. 12-105b(d)(1). Todd's claim could not commence until she had "received notice from the municipality that it has denied the claim or until after 120 days has passed following the filing of the notice of claim, whichever occurs first." K.S.A. 12-105b(d)(1). A municipality under the KTCA "means any county, township, city, school district or other political or taxing subdivision of the state, or any agency, authority, institution or other instrumentality thereof." K.S.A. 75-6102(b).

Todd notes K.S.A. 12-105b(d)(1) states: "In the filing of a notice of claim, *substantial compliance* with the provisions and requirements of this subsection shall constitute valid filing of a claim." (Emphasis added.) She directs this panel's attention to *Myers*, 280 Kan. at 874, which held:

"Although it is not defined in K.S.A. 2004 Supp. 12-105b, 'substantial compliance' has been defined by case law as meaning '"compliance in respect to the essential matters necessary to assure every reasonable objective of the statute."' The objective of the statute is to 'advise the proper municipality . . . of the time and place of the injury and give the municipality an opportunity to ascertain the character and extent of the injury sustained.' [Citations omitted.]"

Todd argues she substantially complied with the statute by serving the County Counselor—who she contends is an agent designated by the Board.

1. *Kansas appellate courts have held service on a county counselor is not substantial compliance.*

In *Zeferjohn v. Shawnee County Sheriff's Dept.*, 26 Kan. App. 2d 379, 383, 988 P.2d 263 (1999), this court held that service on a "county counselor d[oes] not substantially comply with the service requirements of K.S.A. 1998 Supp. 12-105b(d)." It also noted the "statute specifically requires service on the county clerk. Plaintiff's failure to serve the county clerk is fatal to his cause of action and requires that we affirm its dismissal." 26 Kan. App. 2d at 383; see also *Farmers Bank & Trust v. Homestead Community Development*, 58 Kan. App. 2d 877, Syl. ¶ 7, 476 P.3d 1 (2020) ("Failure to serve the notice on the proper official resolves a tort claim filed against a municipality."). The Kansas Supreme Court similarly concluded in *Myers*, 280 Kan. 869, Syl. ¶ 2: "Allowing a claimant against a municipality to serve notice on the county counselor or anyone else who is not the clerk or governing body of the municipality as specified in K.S.A. 2004 Supp. 12-105b(d) is not substantial compliance with the statute."

6

While Todd acknowledges these decisions, she tries to distinguish them by pointing to other decisions and raising a nuance in her case. She first cites *Orr v. Heiman*, 270 Kan. 109, 12 P.3d 387 (2000). In *Orr*, the Supreme Court found that substantial compliance with K.S.A. 1999 Supp. 12-105b(d) was met because the superintendent, who received the 12-105b notice, had "'charge and control of the public schools of the school district.'" *Orr*, 270 Kan. at 114. But *Orr* came before *Myers*, and *Myers* is more on point because *Myers* addressed serving notice on the County Counselor. *Myers*, 280 Kan. 869, Syl. ¶ 2.

Todd also relies on *Steed v. McPherson Area Solid Waste Utility*, 43 Kan. App. 2d 75, 86, 221 P.3d 1157 (2010), which found substantial compliance with K.S.A. 2008 Supp. 12-105b existed when the plaintiff served notice to an office personnel and finance manager because that position "served in a role consistent with that of a clerk," and the municipality did not have a designated clerk. But as Defendants point out, there was no clerk in *Steed* and this court concluded the office personnel and finance manager's position resembled a clerk's role. *Steed* did not say service on someone other than the clerk constitutes substantial compliance when there is a governing board of the municipality and a clerk—both of which are present in Todd's case.

Todd further contends we should not rely on *Farmers Bank & Trust* because according to her, that case concerned a plaintiff who "was arguing that the city was waiving the requirement . . . by accepting service on its attorney." She believes this is distinct from her case because she is arguing the Board did not *waive* its responsibility to accept notice through the clerk or the governing body, but it *designated* the County Counselor to accept notice on behalf of the Board. But Todd misinterprets *Farmers Bank & Trust*. Plaintiffs in that case argued "that the City designated its attorney, Catherine Logan, to receive all communications on this matter." 58 Kan. App. 2d at 895. And the Kansas Supreme Court noted there was "nothing in the record that shows the City designated Logan to receive a K.S.A. 12-105b(d) notice." 58 Kan. App. 2d 896.

2. *The Board did not designate the County Counselor as an individual who can receive K.S.A. 12-105b notice in the Resolution.*

Todd next argues her case is different from *Myers* and *Zeferjohn* because she contends the Resolution designated the County Counselor as an officer who can receive service under K.S.A. 12-105b. Because she believes "neither *Myers* nor *Zeferjohn* addressed a municipality's authority to designate a method of serving K.S.A. 12-105b notices on the governing body of the municipality," she argues those cases are distinguishable from this case where a legal document—the Resolution—designates the County Counselor to manage claims under K.S.A. 12-105b.

Todd makes three arguments about the Resolution:  (1) *Myers* and *Zeferjohn* are distinguishable because neither case concerned whether a municipality can designate through an official act, like the Resolution, whether someone other than the clerk or governing body of the municipality can accept K.S.A. 12-105b notice; (2) the Resolution permits the Sedgwick County Counselor to "receive notice of all claims filed pursuant to K.S.A. 12-105b" on behalf of the Board; and (3) K.S.A. 12-105b permits municipalities to create "additional method[s] of serving K.S.A. 12-105b notices" and the Board did just that in the Resolution.

We need not address Todd's first or third contentions because we do not read the Resolution the same way Todd does. Even if we agreed that a municipality *could* designate an alternate method of serving a K.S.A. 12-105b notice (which does not supplant the statutory requirement of service of a K.S.A. 12-105b notice on the clerk or governing body of the municipality), we do not find that the Board did so.

The Resolution repealed two other resolutions and adopted "Policy No. 2.500." Policy 2.500 states, in relevant part:  "The County Counselor manages:  (1) all claims filed pursuant to K.S.A. 12-105b; (2) all lawsuits filed against Sedgwick County; and (3)

8

all other matters required by Charter Resolution No. 46." It also allows the County Counselor to settle, among other types of claims, "[p]ersonal injury, employment and civil rights matters up to $25,000 per claimant."

Although the Resolution recognizes the County Counselor can manage claims under K.S.A. 12-105b, it does not state the County Counselor may or shall receive notice under the statute. The Kansas Supreme Court has established clear rules related to interpretation of statutes and administrative regulations:

> "The most fundamental rule of statutory construction is that the intent of the Legislature governs if that intent can be ascertained. In ascertaining this intent, we begin with the plain language of the statute, giving common words their ordinary meaning. When a statute is plain and unambiguous, an appellate court should not speculate about the legislative intent behind that clear language, and it should refrain from reading something into the statute that is not readily found in its words. But if a statute's language is ambiguous, we will consult our canons of construction to resolve the ambiguity. [Citations omitted.]" *Johnson v. U.S. Food Service*, 312 Kan. 597, 600-01, 478 P.3d 776 (2021).

While the Resolution may not be a regulation or statute, starting with the plain text of the legal authority is appropriate since we must analyze the Resolution's language. If we found the Resolution permits the County Counselor to accept K.S.A. 12-105b service, we would be "reading something into the statute." The Resolution does not state, for instance, "[t]he County Counselor shall accept K.S.A. 12-105b notice on behalf of the Sedgwick County Board of County Commissioners." It simply states the County Counselor shall "manage" K.S.A. 12-105b claims.

Although there is no "definition" section in the Resolution articulating what it means when it uses the word "manage," the purpose section of the Resolution does state it was created "to document the roles and responsibilities of the Chief Financial Officer

9

and County Counselor related to management of risk and settlement of claims and litigation." The Resolution, therefore, is designed to permit the County Counselor to manage risk, claims, and litigation. It is not crafted to alter K.S.A. 12-105b(d)'s requirement that notice be served to the clerk or governing body of the municipality. Management of claims and notice of them are two very different animals.

We also note that management of Todd's claim by the County Counselor would be outside the scope of the Counselor's authority under the Resolution since Todd's personal injury claim exceeds $25,000. Todd's demand letter informed the County Counselor that Todd would resolve her claim for $750,000. And in Todd's petition, she sought damages in excess of $75,000.

The plain language of the Resolution does not support Todd's argument that the Board delegated its authority to receive K.S.A. 12-105b notice to the County Counselor.

> 3. *Todd's final arguments about what individuals from Sedgwick County EMS told her and the County Counselor's role are unconvincing.*

Finally, Todd suggests that Nichols and Andreen "confirmed" the Board "designat[ed] . . . the County Counselor as the person to receive K.S.A. 12-105b notices *on behalf of the Board of Commissioners*." To support this statement, Todd cites to her response to Defendants' summary judgment motion where she admitted "Crystal Andreen is an Administrative Specialist working in the Risk Management Department for Sedgwick County." While this sentence does support that Andreen works for Sedgwick County, it does not support that she confirmed the Board designated the County Counselor to receive K.S.A. 12-105b(d) notices.

She also cites an affidavit from her lawyer which states Nichols told him "all claims for personal injuries against Sedgwick County EMS or its employees needed to be

10

sent to the County Counselor of Sedgwick County, as that was their custom and practice" and that Andreen told him and his staff "that the custom and practice was for the County Counselor to handle all Notice of Claims for personal injuries filed under K.S.A. 12-105b, once a lawyer was involved in the claim." But even assuming Nichols and Andreen told Todd's counsel that it was "custom and practice" for the County Counselor to "handle" claims like Todd's, the affidavit's depiction of the calls does not support that these individuals said the Board *designated* the County Counselor to *receive* K.S.A. 12-105b(d) notice.

Todd further argues the Board's alleged delegation is "consistent with the statutory duties of a county counselor." She cites K.S.A. 19-702(a), which states the county attorney shall "appear in any court having jurisdiction within the county and prosecute or defend on behalf of the people all actions and proceedings, civil or criminal, in which the state or the county is a party or interested." According to her, since "[t]he County Counselor has the statutory duty to represent the County and the Board of Commissioners in court," it was permissible for the Board to expand that duty by having that position receive K.S.A. 12-105b(d) notices. But simply because a county counselor's duties could be, as Todd puts it, "consistent" with the Board delegating its K.S.A. 12-105b notice responsibilities, does not mean the Board did so in the Resolution.

And finally, while Todd argues there exists a question of fact regarding the Board's designation of authority to the County Counselor, we disagree. The Resolution's language is not ambiguous nor is the scope of the authority designated to the County Counselor. The Resolution makes no mention of designating the County Counselor as the agent for service for K.S.A. 12-105b claims, so we see no need for discovery to explore how employees of Sedgwick County interpreted it.

11

We therefore affirm the district court's decision to grant Defendants' summary judgment motion because Todd failed to substantially comply with K.S.A. 12-105b(d)'s notice requirements.

II. *Did the district court abuse its discretion in denying Todd's motion to join the Sedgwick County Board of Commissioners under K.S.A. 60-219 because the motion was moot?*

The district court found Todd's motion to join the Board under K.S.A. 60-219 was moot because the court lacked subject matter jurisdiction in the case since Todd failed to comply with K.S.A. 12-105b notice requirements. Todd appeals this decision and chiefly argues the district court abused its discretion in reaching its decision because Defendants should have warned Todd that she failed to correctly follow K.S.A. 12-105b.

A. *Standard of review*

A district court's decision to deny a motion to join a necessary party under K.S.A. 2023 Supp. 60-219(a) is reviewed for abuse of discretion. When assessing whether the evidence meets the statutory requirements for joinder, this court is reviewing a mixed question of fact and law. An appellate court, consequently, reviews the district court's factual findings for substantial competent evidence and reviews de novo the district court's legal conclusions. *Landmark Nat'l Bank v. Kesler*, 289 Kan. 528, 532-33, 216 P.3d 158 (2009).

Appellate courts recognize three ways a district court can abuse its discretion. First, discretion is abused if the result reached is "'arbitrary, fanciful, or unreasonable.'" *State v. DeAnda*, 307 Kan. 500, 503, 411 P.3d 330 (2018). That is, no reasonable person would have come to the same conclusion if presented with the same record evidence. Next, a district court abuses its discretion if it disregards or improperly applies controlling legal standards. *State v. Edgar*, 281 Kan. 30, 38, 127 P.3d 986 (2006). Last,

12

discretion is abused if substantial competent evidence does not support a factual finding on which the exercise of discretion or a legal conclusion in the decision is based. *State v. Ward*, 292 Kan. 541, Syl. ¶ 3, 256 P.3d 801 (2011).

 B. *In Defendant's Answer, they "warned" Todd of deficiencies in her claim.*

 Todd asserts two reasons why we should find the district court abused its discretion in denying her motion to join the Board. She first maintains the district court's decision was improper because she properly filed K.S.A. 12-105b notice when she sent it to the County Counselor. As explained above, this argument is not persuasive.

 Next, Todd contends that her delay in moving to join the Board "was the result of Defendants' efforts in this matter." She makes several charged allegations about Defendants. She insinuates they "wast[ed] the district court's time, Plaintiff's time, and Sedgwick County funds" by not informing her sooner that Sedgwick County EMS "does not have the authority to sue or be sued." She also alleges Defendants "purposely waited to bring this issue to the attention of the trial court because of the statute of limitations" and they wanted to "protect" the Board. Todd also asserts that it was Defendants' burden to raise the issue and file a motion to let her know she was suing the wrong person. Lastly, she maintains Defendants "intended to further" her "misconception" by responding to discovery in a certain way.

 It is not Defendants' duty, however, to help Todd analyze whom she should sue. But it is the responsibility of Defendants to assert an affirmative defense in their answer if they do not want to waive the defenses. *In re Parentage of W.L. and G.L.*, 63 Kan. App. 2d 533, 541, 532 P.3d 447 (2023); see K.S.A. 2023 Supp. 60-208(c)(1). And Defendants did just that when they informed Todd, in their answer and amended answer, that Todd "has not complied with K.S.A. 12-105b" and "[t]he Court lacks subject matter

jurisdiction." Todd does not point us to any authority dictating that it is Defendants' burden to do more than they already did.

Defendants point out it has long been held:  "Absent authority expressly given by statute or ordinance, an agency of a city does not have the capacity to sue or to be sued as a separate entity; the city is a necessary and indispensable party to any action filed either by or against the agency." *Murphy v. City of Topeka*, 6 Kan. App. 2d 488, 491-92, 630 P.2d 186 (1981). A district court, however, cannot order the joinder of a municipality if a plaintiff fails "to comply with the notice requirements of K.S.A. 12-105," a predecessor statute similar to K.S.A. 12-105b. 6 Kan. App. 2d at 491-92. Todd should have known it was her job as plaintiff to comply with the notice requirements of K.S.A. 12-105b, and Defendants put her on notice when they answered her complaint and informed her they believed she had not complied with the statute.

As for Todd's accusations about Defendants' actions during discovery, those allegations similarly appear to be baseless. She contends that Sedgwick County EMS stated in its response to Todd's interrogatories, that Brazil "'left employment at Sedgwick County EMS in August 2020, but accepted on February 24, 2022, a part-time paramedic position with us and will begin orientation on March 7, 2022.'" In response to an interrogatory asked by Todd, Brazil noted he "left Sedgwick County Emergency Medical Services August 15, 2020 for a better schedule and increased salary." Todd complains these two answers were made to increase her misconception that Sedgwick County EMS "was a proper defendant in this action." She does not explain this argument or provide any context for why these disparate statements—particularly in light of Defendants' Answer—suggest Sedgwick County EMS is a stand-alone entity rather than a department or agency of the County.

14

We therefore find the district court did not abuse its discretion when it concluded Todd's joinder motion was moot because it lacked subject matter jurisdiction to hear the case.

Affirmed.