No. 83,835

DAISY ORR, INDIVIDUALLY and as EXECUTOR OF THE ESTATE OF CURTIS L. ORR, DECEASED, *Appellant/Cross-appellee,* v. TOM HEIMAN, SUPERINTENDENT OF U.S.D. 281, GRAHAM COUNTY, KANSAS, *et al., Appellees/Cross-appellants.*

(12 P.3d 387)

Opinion filed October 27, 2000.

*Randall W. Weller,* of Jones & Weller, P.A., of Hill City, argued the cause and was on the brief for appellant/cross-appellee.

*Allen G. Glendenning,* of Watkins, Calcara, Rondeau, Friedeman, Bleeker, Glendenning & McVay, Chtd., of Great Bend, argued the cause and was on the brief for appellees/cross-appellants.

The opinion of the court was delivered by

LARSON, J.: The cross-appeal in this case raises a jurisdictional issue as to whether Daisy Orr, individually and as executor of the Estate of Curtis L. Orr, deceased, has substantially complied with the notice of claim requirements of K.S.A. 1999 Supp. 12-105b. If we hold that Mrs. Orr has done so, we then consider her appeal as to the duty or lack thereof of an employer/group life insurance policyholder to provide an employee/insured with notice of conversion rights beyond that which is statutorily required at the time

employment terminates. Our jurisdiction is pursuant to K.S.A. 20-3018(c).

*Statement of facts:*

Curtis L. Orr had been employed by U.S.D. 281 in Hill City for 23 years when he retired because of ill health on July 1, 1995. Mr. Orr had been diagnosed with cancer and given a life expectancy of 3 to 5 years in the fall of 1993. At the time of his retirement he had been told by his doctors that he had less than a year to live.

As an employee of the school district, Mr. Orr was a member of the Kansas Public Employees Retirement System (KPERS). This coverage included a $15,000 life insurance benefit, which was issued through Security Benefit Life Insurance Company.

An additional employment benefit was health insurance through Blue Cross and Blue Shield of Kansas that included a life insurance benefit rider for $15,000 with its subsidiary, Advance Insurance Company.

At the time of Mr. Orr's retirement, he had the right to convert to individual life insurance policies both of the group life insurance policies. This right was specifically noted in riders, clearly marked "conversion privilege," on the policies of insurance that had been furnished to Mr. Orr. Both parties agree and the record does not contradict that no written notice of conversion rights beyond the statements included in the insurance policy was provided to Mr. and Mrs. Orr at the time of his retirement. Mr. Orr did convert a separate health insurance policy which he held but did not convert either of the life insurance policies within the allotted time period.

Mr. Orr died on October 2, 1996. After being denied coverage from both life insurance companies, with at least one suggesting that his employer was obligated to provide notice of conversion rights, Mrs. Orr's legal counsel on November 8, 1996, and November 22,1996, sent demand letters setting forth her claims to the superintendent of U.S.D. 281, Tom Heiman. On July 31, 1997, Mrs. Orr, individually, and as executor of her husband's estate, filed suit against the superintendent, the clerk, and the members of the school board of U.S.D. 281.

After the defendants answered and discovery was completed, the trial court granted defendants' motion for summary judgment, finding (1) the notice of claim was sufficient under K.S.A. 1999 Supp. 12-105b, and (2) the employer/group policyholder was not required by K.S.A. 1999 Supp. 40-435 to give any additional notice of conversion rights at the time of retirement beyond that contained in riders to the insurance policies previously furnished to the employee.

Mrs. Orr appeals the decision that held the notice of conversion rights was legally sufficient and the defendants had satisfied their notification duty under the law. The defendants cross-appealed the trial court's decision that held the notice of the claim delivered to the superintendent was legally sufficient under 12-105b.

*Standard of review*

Our standard of review of motions for summary judgment is well known. See *Bergstrom v. Noah*, 266 Kan. 847, 871-72, 974 P.2d 531 (1999). However, the issues raised on both the appeal and cross-appeal are questions of law involving the interpretation of statutes upon which our review is unlimited. See *Hamilton v. State Farm Fire & Cas. Co.*, 263 Kan. 875, 879, 953 P.2d 1027 (1998). " 'In construing statutes, . . . [e]ffect must be given, if possible, to the entire act and every part thereof. To this end, it is the duty of the court, as far as practicable, to reconcile the different provisions so as to make them consistent, harmonious, and sensible.' [Citation omitted.]" *KPERS v. Reimer & Koger Assocs., Inc.*, 262 Kan. 635, 643, 941 P.2d 1321 (1997).

*Does a notice of claim delivered to a superintendent of schools constitute substantial compliance with the requirement of K.S.A. 1999 Supp. 12-105b(d) specifying that notice be "filed with the clerk or governing body" of a school district?*

We first consider the cross-appeal of U.S.D. 281 which, if sustained, is fatal to Mrs. Orr's claim of relief because the filing of a proper notice of claim under 12-105b is a condition precedent to the filing of an action against a municipality. See *Zeferjohn v. Shaw-*

*nee County Sheriff's Dept.,* 26 Kan. App. 2d 379, 381, 988 P.2d 263 (1999).

The specific provision of K.S.A. 1999 Supp. 12-105b(d) involved in this question states:

"Any person having a claim against a municipality which could give rise to an action brought under the Kansas tort claims act shall file a written notice as provided in this subsection before commencing such action. The notice shall be filed with the clerk or governing body of the municipality . . . . In the filing of a notice of claim, substantial compliance with the provisions and requirements of this subsection shall constitute valid filing of a claim."

School districts are included in the definition of a "municipality," K.S.A. 12-105a(a). K.S.A. 12-105a(b) specifically states: " 'Governing body' " means and includes . . . board of education or other governing body of a school district . . . ."

U.S.D. 281's argument is simply stated: because the notice sent by Mrs. Orr's counsel was mailed to the superintendent and not the school board, it failed to meet the requirements of 12-105b(d).

The trial court in its opinion set forth the last of the two letters sent by Mrs. Orr's counsel to Tom Heiman and the provision of 12-105b(d), and then held:

"This requirement is a condition precedent which must be both satisfied and pled in order for a complaint asserting a claim against [a] municipality to state a cause of action. Johnson v. Board of Pratt County Comm'rs, 259 Kan. 305 (1996); Sage v. Williams, 23 Kan. App. 2d 624 (1997); Tucking v. Board of Jefferson County Comm'rs, 14 Kan. App. 2d 442, 796 P.2d 1055 (1990), review denied 246 Kan. 770 (1990); K.S.A. 60-209. If a plaintiff fails to meet the requirements set forth under K.S.A. 12-105b, the court is without jurisdiction. Sage v. Williams, supra, Tucking v. Board of Jefferson County Comm'rs, supra. This requirement not only applies to claims against the municipality itself but to claims against municipal employees arising out of the course and scope of their employment. King v. Pimental, 20 Kan. App. 2d 579 (1995). The notice sent is sufficient to meet the test as set out above."

Although U.S.D. 281 makes reference to the content of the letters, it centers its argument on appeal upon the improper service of the notice of claim on the superintendent; we will limit our analysis to that contention.

It is clear that under a strict reading of the provisions of 12-105b(d), notice of a claim delivered to a superintendent is not

notice on the "clerk or governing body." However, the legislature in 1987 enacted the "substantial compliance" wording within the statute, and earlier decisions such as *Howell v. City of Hutchinson*, 177 Kan. 722, 728, 282 P.2d 373 (1955), and *Dechant v. City of Hays*, 112 Kan. 729, 212 Pac. 682 (1923), which have required strict compliance with the statutory requirements, appear to have their authority diminished. However, an argument can be made that the "substantial compliance" standard was already being read into the statute prior to the adoption of the 1987 amendment as the Court of Appeals did in *Tucking v. Board of Jefferson County Comm'rs*, 14 Kan. App. 2d 442, 446, 796 P.2d 1055, *rev. denied* 246 Kan. 770 (1990), when it stated: "In interpreting the prior statutes, courts have always found a plaintiff need not do more than *substantially comply* with the elements." (Emphasis added.) Despite this apparent contradiction, the test we are obligated to apply is whether "substantial compliance" exists.

While "substantial compliance" is not defined in the notice statute, our case law has, beginning with *City of Kansas City v. Board of County Commissioners*, 213 Kan. 777, Syl. ¶ 2, 518 P.2d 403 (1974), and extending down to the *City of Lenexa v. City of Olathe*, 233 Kan. 159, 164, 660 P.2d 1368 (1983), stated that "substantial compliance" refers to " 'compliance in respect to the essential matters necessary to assure every reasonable objective of the statute.' "

A recent case from the Court of Appeals, *Smith v. Kennedy*, 26 Kan. App. 2d 351, 358, 985 P.2d 715 (1999), discussed the 1987 amendment adding the "substantial compliance" language and stated: "Significantly, there are no Kansas cases addressing the impact of the substantial compliance language upon the requirement that a municipality's governing body be served with a notice of claim."

While this statement may have been accurate at the time the opinion was written, the *Smith* case, along with the *Zeferjohn* opinion filed 1 week after *Smith*, and *Bell v. Kansas City, Kansas, Housing Authority*, 268 Kan. 208, 992 P.2d 1233 (1999), decided 90 days later, are each "substantial compliance" cases which reach somewhat different results.

In *Zeferjohn,* the required K.S.A. 12-105b notice to Shawnee County was served on the office of Shawnee County Counselor and it was held this did not comply with the statutory requirement that the claim must be filed with the county clerk.

In *Smith,* the plaintiff, desiring to give notice of claim against the Coffey County Hospital, sent identical notices of claim to the Coffey County Clerk and the Chief Executive Officer of the hospital. The Court of Appeals' *Smith* opinion looked to the cases decided prior to the addition of the "substantial compliance" language to the statute, pointed to the federal court cases of *Huffman v. City of Prairie Village, KS.,* 980 F. Supp. 1192 (D. Kan. 1997), and *Tank v. Chronister,* 941 F. Supp. 969 (D. Kan. 1996), as involving a similar question, and held:

"The legislative intent of K.S.A. 12-105b is to insure that a municipality is made aware of a claim against it and that the municipality has ample time to investigate the claim before being sued on that claim. Here, the notices of claim were sent to George, chief executive officer of CCH, and Birk, the clerk of the Board of County Commissioners of Coffey County. Under K.S.A. 12-105a, the Board of County Commissioners of Coffey County is the parent unit of CCH. In addition, the CCH notices furnished the essentials of the statute. As a result, we conclude that notices to George and Birk substantially complied with the notice provisions of K.S.A. 12-105b." 26 Kan. App. 2d at 361.

In our *Bell* opinion, we discussed the cases decided before and after the statutory amendment, commented in detail on the *Smith* decision, did not discuss *Zeferjohn,* but reached no ultimate conclusion on the "substantial compliance" issue as the action was returned for additional discovery.

The position of a superintendent of schools is specifically provided for in K.S.A. 72-8202b(c), where it is stated: "The superintendent of schools shall have charge and control of the public schools of the school district, subject to the orders, rules and regulations of the board of education." K.S.A. 72-8202c provides: "The board of education of each school district shall appoint a clerk, who shall serve at the pleasure of the board." While it obviously would have been better practice to mail the letter to the clerk, we are hard pressed to not agree with the trial court that by sending the notice to the superintendent of schools, who is statu-

torily recognized to "have charge and control of the public schools," substantial compliance with 12-105b(d) was met. We so hold and affirm the trial court's ruling. The contention of the cross-claim is denied.

With the cross-appeal resolved in Mrs. Orr's favor, we now reach the issue raised by her appeal.

*Does a common-law duty exist on behalf of an employer/group life insurance policyholder to notify an employee/insured of his or her conversion rights at the time employment is terminated where the requirement for conversion notification is statutorily set forth in K.S.A. 1999 Supp. 40-435?*

The trial court, in ruling in favor of U.S.D. 281, did not find that any facts were in dispute. The trial court found that Mr. and Mrs. Orr had received certificates and policies which contained notices of the conversion privilege, had been through the conversion process with a health insurance policy, and were aware they were not paying premiums on the life insurance policies after Mr. Orr's retirement. The trial court noted Mrs. Orr did not argue that her husband had never been given any notice of the conversion rights. Rather, her complaint was that the conversion privilege had to again be brought to her husband's attention expressly and directly *at the time of his retirement,* and this was to be done by the school district as opposed to the insurance companies.

The trial court found no basis for Mrs. Orr's claims in 40-435, stating:

"[A] careful reading of that statute reveals no support for plaintiff's position. Nowhere in that statute is an obligation placed on anyone to provide any particular notice of any particular time. Rather, the statute appears to begin with the assumption that some employees will not be give[n] notice. Its purpose is clearly to provide for what should occur in those cases where notice is not given. The answer provided by the statute to that question is that the time for applying for conversion should be extended in those cases where notice is not give[n].

"There is no basis for concluding that the legislature intended the statute to include an obligation to give notice.

"Since nothing in the statute clearly establishes an obligation, there is absolutely nothing in the statute from which a legislative intent can be discerned as to whether obligation is on the insurer or on the employer.

"The statute does not impose any duty on the defendants to give notice of conversion at the time of retirement."

We look first to the specific wording of K.S.A. 1999 Supp. 40-435, which reads as follows:

"If any individual insured under a group life insurance policy delivered in this state becomes entitled under the terms of such policy to have an individual policy of life insurance issued to such insured without evidence of insurability, subject to making application and payment of the first premium within the period specified in such policy, and if such individual is not given notice of the existence of such right at least 15 days prior to the expiration date of such period, then, in such event the individual shall have an additional period within which to exercise such right, but, except as provided in subsection (10) of K.S.A. 40-434, and amendments thereto, nothing contained in this section shall be construed to continue any insurance beyond the period provided in such policy. The additional period shall expire 15 days next after the individual is given such notice but in no event shall such additional period extend beyond 60 days next after the expiration date of the period provided in such policy. Written notice presented to the individual or mailed by the policyholder to the last known address of the individual or mailed by the insurer to the last known address of the individual as furnished by the policyholder shall constitute notice for the purpose of this section."

Although Mrs. Orr relied on 40-435 at the trial court level, she now states in her brief that it "may or may not govern the responsibilities of the parties in this action," and more strongly argues for a court-created duty of employer notification.

U.S.D. 281 points out the statute begins with the assumption that some employees will not be given notice of conversion rights and only provides for extensions of time in which to exercise the conversion privilege when notice is not given. The school district more convincingly argues that the statute does not state when the notice is to be given and, most importantly, that nowhere in the statute does it place any such burden upon the employer rather than on the insurance company.

While the specific wording of the conversion privilege riders to the two insurance policies is not in issue in this appeal, it is clear that the wording of both riders is designed to comply with and follow the requirements of K.S.A. 40-435 as well as K.S.A. 40-434(8), (9), (10). Nowhere in either K.S.A. 40-434 or K.S.A. 1999

Supp. 40-435 is notice required beyond that which is in the conversion privilege rider.

While we have no Kansas cases where these statutes have previously been construed, our reading of their terms clearly and absolutely show they place no obligation on employers such as U.S.D. 281 to give notice to employees or to ensure that notice is given of conversion rights in group life insurance policies at the time of retirement or termination of employment.

The denial of coverage by Security Benefit is not in the record, but in the letter of Advance Insurance Company to Mrs. Orr dated November 20, 1996, the following statement is found: "It is the responsibility of the group policyholder to give a terminated employee a Notice of Conversion card. With this card the terminated employee can apply to convert his coverage to an Ordinary Life policy. We did not receive a Notice of Conversion card from Mrs. Orr."

The Advance Insurance Company letter may be a correct statement of the manner in which a notice of conversion card is delivered to an employee terminating his or her employment, but it in no manner legally establishes an obligation on behalf of an employer/group policyholder to give notice to the insured/employee.

While it may be desirable for employees who are terminating their employment to receive, either from the insurance company or their employer, some type of specific additional notice of the conversion privilege beyond that in the conversion privilege rider, such is for the legislature to specifically provide and not for this court to create.

We have examined each of the numerous cases cited to us by both parties to this appeal, which are in the main not applicable because they involve different statutes of other states, are factually dissimilar, or are suits against insurance companies and not employers such as U.S.D. 281.

The argument which Mrs. Orr makes that liability should exist here because employers are responsible for fair dealing and have a fiduciary obligation to employees will not be considered as it is made for the first time on appeal, see *Jarboe v. Board of Sedgwick County Comm'rs*, 262 Kan. 615, 622, 938 P.2d 1293 (1997); even

if we considered it, is not substantiated by authority and is not persuasive.

Finally, answers in response to deposition questions by employees of the insurance companies as to their opinion on questions of law would not be admissible in any trial and will not be considered as authority to substantiate Mrs. Orr's arguments on appeal.

The trial court is affirmed.