NOT DESIGNATED FOR PUBLICATION

No. 117,538

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

ROBERT MORGAN,
*Appellant*,

v.

BOARD OF COUNTY COMMISSIONERS OF THE
COUNTY OF DONIPHAN, KANSAS,
*Appellee*.


MEMORANDUM OPINION


Appeal from Doniphan District Court; JAMES A. PATTON, judge. Opinion filed December 8, 2017. Affirmed.


*Ben T. Schmitt* and *Matthew F. Mulhern*, of Kansas City, Missouri, for appellant.


*Vaughn Burkholder* and *Eric Turner*, of Foulston Siefkin LLP, of Overland Park, for appellee.


Before BUSER, P.J., BRUNS, J., and STUTZMAN, S.J.


PER CURIAM: In this personal injury action brought under the Kansas Tort Claims Act, K.S.A. 75-6101 et seq., Robert Morgan appeals from the district court's granting of summary judgment in favor of the Board of County Commissioners of the County of Doniphan, Kansas, (Doniphan County). The district court determined that it lacked subject matter jurisdiction because Morgan failed to meet the statutory notice requirements set forth in K.S.A. 2016 Supp. 12-105b(d). On appeal, Morgan contends that he substantially complied with the requirements of K.S.A. 2016 Supp. 12-105b(d). He also contends that Doniphan County failed to follow the proper procedure to raise the

1

issue of subject matter jurisdiction. Based on our de novo review of the record, we conclude that the district court properly granted summary judgment to Doniphan County as a matter law. Thus, we affirm.

FACTUAL AND PROCEDURAL HISTORY

The material facts of this case are uncontroverted. On October 18, 2014, Morgan rode his motorcycle on Old Kiowa Road in Doniphan County. Old Kiowa Road is a rural gravel or dirt road maintained by the county for public use. Morgan hit a wash-out located in the road, and his motorcycle flipped. Evidently, Morgan was ejected from the motorcycle, which caused him to hurt his back, and he was taken to a hospital by ambulance.

On December 1, 2014, Lucas G. Whitworth, a former associate of the Davis, Bethune & Jones, LLC law firm, sent a certified letter to the "Engineer, Road & Bridge Department" of Doniphan County. The letter was not directed to any particular person or public officer. Instead, the salutation simply stated:  "To Whom It May Concern." Moreover, it is unclear from the record on appeal who actually received the letter.

The reference section of the letter stated:  "NOTICE OF REPRESENTATION, NOTICE TO PRESERVE EVIDENCE, DEMAND FOR INSURANCE INFORMATION." There is no claim for damages set forth in the letter nor does it mention K.S.A. 2016 Supp. 12-105b(d). The letter asserted that Morgan's injuries were "severe, permanent and progressive in nature," and the attorney attached to the letter a copy of the accident report prepared by the Kansas Highway Patrol. The accident report simply stated that "Morgan injured his back." There is no further explanation of Morgan's injuries in the body of the letter or in the accident report. In particular, the letter did not contain a statement regarding the nature and extent of injuries that Morgan claimed to have suffered as a result of the accident.

2

The body of the letter contained a "demand for full and complete copies of insurance policies . . . which may indemnify Doniphan County in this matter." In addition, the letter contained multiple demands that Doniphan County preserve evidence relating to the accident, the maintenance of the applicable stretch of Old Kiowa Road, and any complaints received by the county regarding the condition of the road. The letter also stated that if copies of the county's insurance policies were not provided within 30 days, a lawsuit would "immediately" be filed. At no time did Morgan file a written notice of claim with—or send correspondence to—the clerk or governing body of Doniphan County.

By December 16, 2014, the insurance carrier for Doniphan County was aware of the accident and retained the law firm of Foulston Siefkin, LLP to represent the county. At some point prior to January 12, 2015, Ben T. Schmitt of Schmitt, Mulhern, LLC began representing Morgan. On that date, Schmitt sent a letter to Bud Cowan of Foulston Siefkin, LLP, which included photos of Morgan's vertebrae that had allegedly been shattered as a result of the motorcycle accident. Over the next several months, Schmitt sent additional letters to Cowan in which he enclosed copies of medical records and medical bills for the injuries Morgan allegedly suffered in the accident.

On January 28, 2016, Morgan filed a petition in Doniphan County District Court against the county. In paragraph 3 of the petition, Morgan asserted that "[p]ursuant to K.S.A. 12-105b, written correspondence was provided to Doniphan County regarding the potential claim of the Plaintiff against Doniphan County under the Kansas Tort Claims Act." In its answer, Doniphan County denied the assertion set forth in paragraph 3 of the petition. In addition, the county asserted lack of subject matter jurisdiction as a defense. After the filing of the initial pleadings, the parties engaged in written discovery—including interrogatories and requests for production of documents. In addition, Morgan deposed a county employee, Martha Wiedmer, who works in the "Engineer, Road & Bridge Department."

3

On November 1, 2016, Doniphan County filed a motion to dismiss for lack of subject matter jurisdiction under K.S.A. 2016 Supp. 60-212(b)(1). Specifically, the county maintained that the district court lacked subject matter jurisdiction because Morgan failed to comply with the provisions of K.S.A. 2016 Supp. 12-105b(d). On November 18, 2016, Morgan filed a response to the county's motion to dismiss. Morgan argued that the various letters sent by his attorneys to the "Engineer, Road & Bridge Department" and to the attorney retained to represent the county should be construed together as substantially complying with the requirements of K.S.A. 2016 Supp. 12-105b(d). Moreover, Morgan claimed that the district court should not consider the motion to dismiss because the county had already filed an answer and participated in discovery. In the alternative, Morgan requested that the district court treat the motion as one for summary judgment because the parties were relying upon material outside of the pleadings. Nevertheless, Morgan also argued that the case was not yet ripe for summary judgment and that it should be denied.

On December 2, 2016, the county filed a reply to Morgan's response. In its reply, the county argued that the notice requirement set forth in K.S.A. 2016 Supp. 12-105b(d) for claims asserted under the Kansas Tort Claims Act implicates subject matter jurisdiction. Furthermore, the county argued that lack of subject matter jurisdiction can be raised at any time and cannot be waived. Accordingly, the county argued that it was entitled to judgment as a matter of law regardless of whether its motion was treated as a motion to dismiss or a motion for summary judgment. The district court held a hearing on Doniphan County's motion to dismiss on December 21, 2016, at which the parties presented their arguments to the court. The district court took the motion under advisement.

On March 9, 2017, the district court entered a 12-page memorandum decision granting summary judgment to Doniphan County as a matter of law. After setting forth findings of uncontroverted fact, the district court turned to its rationale and decision.

4

Because both parties filed documents outside the pleadings, the district court granted Morgan's request to treat the county's motion to dismiss as one for summary judgment. Ultimately, the district court determined that it lacked subject matter jurisdiction because Morgan had failed to comply with the notice requirements under K.S.A. 2016 Supp. 12-105b(d). Specifically, the district court concluded that Morgan had failed to file a notice of claim with either the county clerk or the county commission. In addition, the district court concluded that Morgan failed to provide the county with a concise statement of the nature and extent of his claimed injuries or with a statement of the amount of monetary damages being requested as required by K.S.A. 2016 Supp. 12-105b(d).

ANALYSIS

*Issues Presented and Standard of Review*

On appeal, Morgan contends that the district court erred in granting summary judgment to Doniphan County. First, Morgan argues that he substantially complied with the notice requirements set forth in K.S.A. 12-105b(d) before filing this action against the county under the Kansas Tort Claims Act. Second, Morgan challenges the county's failure to file a motion to dismiss until after the statute of limitations had already run.

As recently stated by the Kansas Supreme Court in *Creegan v. State*, 305 Kan. 1156, 391 P.3d 36 (2017):

> "'Summary judgment is appropriate when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. The trial court is required to resolve all facts and inferences which may reasonably be drawn from the evidence in favor of the party against whom the ruling is sought. When opposing a motion for summary judgment, an adverse party must come forward with evidence to establish a dispute as to a material fact. In order to preclude summary judgment, the facts subject to the dispute must be material to the conclusive

5

issues in the case. On appeal, we apply the same rules and where we find reasonable minds could differ as to the conclusions drawn from the evidence, summary judgment must be denied. [Citations omitted.]'" 305 Kan. at 1159.

See also K.S.A. 2016 Supp. 60-256(c)(2).

Whether subject matter jurisdiction exists is a question of law over which our scope of review is unlimited. *Frazier v. Goudschaal*, 296 Kan. 730, 743, 295 P.3d 542 (2013); see also *Jahnke v. Blue Cross & Blue Shield of Kansas, Inc.*, 51 Kan. App. 2d 678, 686, 353 P.3d 455 (2015). Similarly, the interpretation of a statute is a question of law over which we have unlimited review. *Neighbor v. Westar Energy, Inc.*, 301 Kan. 916, 918, 349 P.3d 469 (2015). In particular, "[w]hen the contents of the purported notice are uncontroverted, whether a plaintiff has substantially complied with K.S.A. 2012 Supp. 12-105b(d) involves only statutory interpretation, and, accordingly, is a question of law subject to de novo review." *Sleeth v. Sedan City Hospital*, 298 Kan. 853, 863, 317 P.3d 782 (2014).

*Compliance with K.S.A. 2016 Supp. 12-105b(d)*

In *Sleeth v. Sedan City Hospital*, the Kansas Supreme Court held that the notice requirements set forth in K.S.A. 2012 Supp. 12-105b(d) establish "a statutory condition precedent that must be met before a court has subject matter jurisdiction over a claim against a municipality under the Kansas Tort Claims Act." 298 Kan. at 871. "Subject matter jurisdiction establishes the court's authority to hear and decide a particular action. It cannot be conferred by consent, waiver, or estoppel. Nor can parties convey subject matter jurisdiction onto a court by failing to object to the court's lack of jurisdiction." 298 Kan. at 868. If a district court lacks subject matter jurisdiction, an appellate court cannot acquire jurisdiction over the subject matter on appeal. *Kingsley v. Kansas Dept. of Revenue*, 288 Kan. 390, 395, 204 P.3d 562 (2009).

6

In this case, the district court concluded as a matter of law that it lacked subject matter jurisdiction because Morgan had failed to substantially comply with the provisions of K.S.A. 2016 Supp. 12-105b(d). This statute is part of the Uniform Procedure for Payment of Claims Act, K.S.A. 2016 Supp. 12-105a, et seq., which provides, in part, that "[a]ll claims against a municipality must be presented in writing with a full account of the items, and no claim shall be allowed except in accordance with the provisions of this section." K.S.A. 2016 Supp. 12-105b(a). "Municipality" is defined in K.S.A. 2016 Supp. 12-105a(a) to include counties, and the "[g]overning body" of a county is defined as its "board of county commissioners" under K.S.A. 2016 Supp. 12-105a(b). Furthermore, K.S.A. 2016 Supp. 12-105a(c) defines the term "[c]laim"—as used in the Act—to mean "the document relating to and stating an amount owing to the claimant by a municipality for . . . some action taken by or for the municipality."

In turn, K.S.A. 2016 Supp. 12-105b(d) sets forth the procedure to be followed by those who have a claim against a municipality under the Kansas Tort Claims Act. Specifically, K.S.A. 2016 Supp. 12-105b(d) provides:

"Any person having a claim against a municipality . . . which could give rise to an action brought under the Kansas tort claims act *shall file a written notice* as provided in this subsection before commencing such action. The notice shall be filed *with the clerk or governing body of the municipality* and *shall contain the following:* (1) The name and address of the claimant and the name and address of the claimant's attorney, if any; (2) a concise statement of the factual basis of the claim, including the date, time, place and circumstances of the act, omission or event complained of; (3) the name and address of any public officer or employee involved, if known; (4) *a concise statement of the nature and the extent of the injury claimed to have been suffered; and* (5) *a statement of the amount of monetary damages that is being requested.* In the filing of a notice of claim, substantial compliance with the provisions and requirements of this subsection shall constitute valid filing of a claim. The contents of such notice shall not be admissible in any subsequent action arising out of the claim. Once notice of the claim is filed, no action shall be commenced until after the claimant has received notice from the municipality

7

that it has denied the claim or until after 120 days has passed following the filing of the notice of claim, whichever occurs first. A claim is deemed denied if the municipality fails to approve the claim in its entirety within 120 days unless the interested parties have reached a settlement before the expiration of that period. No person may initiate an action against a municipality or against an employee of a municipality unless the claim has been denied in whole or part. Any action brought pursuant to the Kansas tort claims act shall be commenced within the time period provided for in the code of civil procedure or it shall be forever barred, except that, a claimant shall have no less than 90 days from the date the claim is denied or deemed denied in which to commence an action." (Emphasis added.)

We pause to note that the 2015 Kansas Legislature amended K.S.A. 12-105b(d) to clarify that the statutory notice of claim requirements apply not only to Kansas Tort Claims Act claims against municipalities but also to claims brought under Act against the employees of a municipality. The 2015 amendment was enacted in response to the Kansas Supreme Court's holding in *Whaley v. Sharp*, 301 Kan. 192, 193, 343 P.3d 63 (2014), which had held that the notice of claim requirements found in K.S.A. 12-105b(d) did not apply to claims under the Kansas Tort Claims Act brought against the employees of a municipality. In the present case, however, we are not dealing with a lawsuit filed against a municipal employee. Thus, we find that the 2015 amendment is not material to the outcome of this appeal.

Applying the plain and unambiguous language of K.S.A. 2016 Supp. 12-105b(d) to the uncontroverted facts, we conclude that the district court did not err in finding that it lacked subject matter jurisdiction in this case. A review of the record on appeal reveals that Morgan failed to file a notice of claim with either the county clerk or the county commission. Likewise, none of the letters on which Morgan relies to argue substantial compliance was addressed to the county clerk or to the county commission. Further, we note that none of the letters included "a concise statement of the nature and extent of the

injury claimed to have been suffered" or "a statement of the amount of monetary damages that [was] being requested" as required by K.S.A. 2016 Supp. 12-105b(d)(4) and (5).

Morgan argues that the letter sent by his former attorney addressed to the county's "Engineer, Road & Bridge Department" and the subsequent letters sent by his current attorney to defense counsel representing Doniphan County should be construed to substantially comply with the statutory requirement to file a notice of claim with either the clerk of a municipality or its governing body. In support of his argument, Morgan cites to the Kansas Supreme Court's decision in *Orr v. Heiman*, 270 Kan. 109, 12 P.3d 387 (2000). In *Orr*, the plaintiff sent her notice of claim to the superintendent of U.S.D. 281. After noting that it would have been better practice to mail the notice of claim to the clerk of the school board, the *Orr* court concluded that because the school superintendent was recognized by K.S.A. 72-8202b(c) as having "'charge and control of the public schools,' substantial compliance with 12-105b(d) was met." 270 Kan. at 114-15.

Subsequently, in *Myers v. Board of Jackson County Comm'rs*, 280 Kan. 869, 874, 127 P.3d 319 (2006), the Kansas Supreme Court clarified that the decision in *Orr* was based on the school superintendent's statutory position of control over the public schools. In contrast, the *Myers* court determined that sending a notice of claim to a county counselor did not constitute substantial compliance with the statutory requirements as an attorney has no control over the county. 280 Kan. at 874-77; see also *Zeferjohn v. Shawnee County Sheriff's Dept.*, 26 Kan. App. 2d 379, 383, 988 P.2d 263 (1999). Specifically, our Supreme Court found in *Myers*, 280 Kan. at 877, that "[a]llowing a claimant to serve notice on a county counselor *or anyone else* who is not the 'clerk or governing body of the municipality' . . . would violate the clear language in K.S.A. [2016] Supp. 12-105b." (Emphasis added.) Accordingly, the court held that "[t]he 'substantial compliance' language does not authorize the court to create new methods of serving notice of claim. [Citations omitted.]" (Emphasis added.) 280 Kan. at 877.

9

Although Morgan attempts to equate the position of county engineer to that of the school superintendent who was served with the notice of claim in *Orr*, we note that the letter sent by Morgan's former attorney on December 1, 2014, was not addressed to a county engineer either by name or by title. In fact, when asked at oral argument, neither Morgan's counsel nor counsel for Doniphan County knew whether the county actually employs an engineer or whether it contracts with an outside engineering consultant to perform engineering tasks for the county. Instead, the letter was addressed to the "Engineer, Road & Bridge Department" of Doniphan County and it is unclear from the record who actually received the letter. As this court has previously held, service of a notice of claim letter on a county public works department fails to literally or substantially comply with the filing requirements of K.S.A. 2016 Supp. 12-105b(d). *Meara v. Douglas County*, No. 107,471, 2013 WL 310363 (Kan. App. 2013) (unpublished opinion).

Furthermore, even if the letter had been addressed to a county engineer, we do not find that it would constitute substantial compliance with the provisions of K.S.A. 2016 Supp. 12-105b(d). K.S.A. 68-501 requires the board of county commissioners of each county in Kansas to "appoint a licensed professional engineer" to serve as the county engineer. The duties of the county engineer are to:

"(1) Prepare plans and specifications and estimates for roads, bridges and culverts to be built by the county;

"(2) act for the county in all matters relating to the supervision of the construction, repairing, surfacing, resurfacing and maintenance of any roads, bridges or culverts, or anything pertaining to rivers, streams or watercourses, for which the county pays any part of the cost thereof;

"(3) visit and inspect the highways and culverts in each township of the county or district which have been reported as unsafe or in need of repair, and advise and direct the

10

township board and the road overseer of each township as to the best methods of construction, repair, maintenance and improvement of such highways and culverts;

"(4) prepare plans, specifications and general regulations governing the construction and maintenance of township roads and culverts, and upon request furnish copies of the same to the township board and to the road overseer of the several townships of the county or district;

"(5) keep a record of all contracts and of all purchases of material, machinery or apparatus to be used in road construction, in excess of $10,000, approved by the county engineer in any township;

"(6) study the soil conditions and collect information concerning the various deposits of gravel, stone, sand, clay and other road and bridge building materials, and to investigate and determine the most approved methods of using the same;

"(7) make maps of the roads in the different townships of the county or district, and where there are no other records, or the records are incomplete, and when ordered by the county commissioners, the county engineer shall make maps of plats and file them in the offices of the county clerk and township clerk, which when passed upon and adopted by the board of county commissioners shall be the records of such roads where there are no other records, and shall be additional and supplemental records when the former records are incomplete or imperfect;

"(8) answer inquiries and to hold at least one public meeting annually to advise with highway officials in road, bridge and culvert improvement, and to perform all other duties required by law." K.S.A. 68-502.

Unlike the school superintendent in *Orr*, county engineers are not granted "charge and control" over counties nor do they make policy decisions. Rather, the power and authority to conduct the business of a Kansas county is granted by to the board of county commissioners. K.S.A. 19-201, et seq. The authority of the board of county commissioners is set out in K.S.A. 19-212, which includes—but is not limited to—the

11

power to make decisions concerning the property of county; to handle the financial affairs of the county; to purchase property, to apportion and levy taxes; to represent the county; to manage the business affairs of the county; to organize townships; to lay out, alter, or discontinue roadways and to perform such other duties respecting roads as may be provided by law; to enter into contracts with any landowners for the construction and maintenance of underpasses, bridges, and drainageways; to protect and promote the public health and welfare; and to perform such other duties as prescribed by law. K.S.A. 19-212. In addition, the board of county commissioners is granted "exclusive control of all . . . county expenditures." K.S.A. 19-229.

Accordingly, we find that the initial letter sent by Morgan's former attorney to the "Engineer, Road & Bridge Department" of Doniphan County does not literally or substantially comply with the filing requirements of K.S.A. 2016 Supp. 12-105b(d). Furthermore, we find that the subsequent letters sent by Morgan's current attorney to defense counsel prior to filing this action do not literally or substantially comply with the statutory filing requirements. As a result of Morgan's failure to substantially comply with filing requirements of K.S.A. 2016 Supp. 12-105b(d), we conclude the district court correctly decided that it did not have subject matter jurisdiction over this case.

Even if Morgan had substantially complied with the filing requirements of K.S.A. 2016 Supp. 12-105b(d), the district court was also deprived of subject matter jurisdiction in this case due to Morgan's failure to substantially comply with the notice requirements set forth in the statute. The letters that Morgan suggests should be read together to constitute a notice of claim under K.S.A. 2016 Supp. 12-105b(d) do not reference the statute or give any indication that they were intended to serve as the notice required by the statute. As indicated above, Morgan made no attempt in any of the letters to set forth "a concise statement of the nature and the extent of the injury claimed to have been suffered" nor did any of the letters contain "a statement of the amount of monetary damages that [was] being requested."

12

The initial letter sent by Morgan's former attorney on December 1, 2014, simply alleged that his client's injuries were "severe, permanent and progressive in nature." Although a Kansas Highway Patrol accident report was attached, it only stated that Morgan hurt his back with no further explanation provided. Furthermore, instead of making a demand for monetary damages, the initial letter merely requested that the county produce a copy of its insurance policy and preserve evidence. We also note that the letter threatened that a lawsuit would be filed within 30 days—rather than the statutorily required 120 days—if the county failed to provide a copy of its insurance policy to Morgan's attorney.

In the alternative, Morgan argues that even if his initial letter was insufficient to substantially comply with the notice requirements of K.S.A. 2016 Supp. 12-105b(d), the subsequent letters sent by his current attorney to defense counsel are sufficient to substantially comply with the statute. A review of these letters reveals that they contain additional information about the nature and extent of Morgan's alleged injuries suffered in the motorcycle accident. These letters also include a list of medical bills incurred. However, none of the letters attempted to set forth the amount of monetary damages being sought or even an estimated amount of damages.

The amount of damages requested by a claimant is extremely important—if not essential—for compliance with the objectives and requirements K.S.A. 2016 Supp. 12-105b(d). *Sleeth*, 298 Kan. at 866. The plain language of the statute requires "a statement of the *amount* of monetary damages that is being requested." (Emphasis added.) K.S.A. 2016 Supp. 12-105b(d)(5). Moreover, as noted above, the term "[c]laim" is defined under the Uniform Procedure for Payment of Claims Act as "the document relating to and stating an *amount* owing to the claimant by a municipality for . . . some action taken by or for the municipality . . . ." (Emphasis added.) K.S.A. 2016 Supp. 12-105a(c).

13

Our Supreme Court has held that some mention of damages or the amount of the claim is essential "because it is impossible for a municipality to evaluate what is at stake without any indication as to what the claimant wants." *Sleeth*, 298 Kan. at 866. By definition, one cannot have a "claim" for payment under the Uniform Procedure for Payment of Claims Act if the amount is unknown to the municipality. Here, none of Morgan's letters even estimated the amount of monetary damages he was requesting. The amount of medical expenses incurred is only one part of the equation in determining damages in a personal injury case. Thus, we conclude that the letters sent by Morgan's attorneys prior to filing this lawsuit do not meet the objective or requirements of K.S.A. 2016 Supp. 12-105b(d) when the letters do not set forth the amount of monetary damages requested or an estimate of the amount sought.

Based on our review of the record on appeal, we conclude that there is no genuine issue as to any material fact and that Doniphan County is entitled to judgment as a matter of law. As our Supreme Court has held, K.S.A. 2016 Supp. 12-105b(d) establishes a "condition precedent that must be met before a court has subject matter jurisdiction over a claim against a municipality" brought under the Kansas Tort Claims Act. Because the district court did not have subject matter jurisdiction, it did not err in granting summary judgment to Doniphan County.

*Timing of Doniphan County's Motion*

Finally, Morgan contends that the district court should not have granted summary judgment in favor of Doniphan County because the county did not seek dismissal of the action prior to filing its answer. In support of this contention, Morgan argues that the county's motion to dismiss did not comply with K.S.A. 2016 Supp. 60-212(b), which states that "[e]very defense to a claim for relief in an pleading must be asserted in the responsive pleading if one is required. But a party may assert [the defense of lack of subject matter jurisdiction] by motion . . . ." According to the statute, if the party asserts

14

the defense by motion, it "must be made before pleading if a responsive pleading is allowed." K.S.A. 2016 Supp. 60-212(b).

Here, Doniphan County expressly asserted the defense of lack of subject matter jurisdiction in its answer. In addition, the county's answer denied the averment in Morgan's petition that he had complied with the notice of claim requirements set forth in K.S.A. 2016 Supp. 12-105b(d). Moreover, subject matter jurisdiction is not a waivable defense. See K.S.A. 2016 Supp. 60-212(h)(1). Rather, if a "court determines *at any time* that it lacks subject-matter jurisdiction, the court *must dismiss* the action." (Emphasis added.) K.S.A. 2016 Supp. 60-212(h)(3).

Notwithstanding, Morgan argues that we should invoke the doctrine of laches and find that the district court should have denied the county relief because it waited until after the statute of limitations had run to seek dismissal for lack of subject matter jurisdiction. Morgan points out that defense counsel asked for an extension of time to file its answer, which his attorney agreed to out of professional courtesy. Then, the parties engaged in discovery for the next several months before the county finally sought dismissal for lack of subject matter jurisdiction 13 days after the statute of limitations had expired. As a result, it was too late for Morgan to take action to correct his failure to file a proper notice of claim.

Although we are sympathetic to Morgan's argument, we cannot say that it was improper for the county to wait to seek dismissal until after the statute of limitations had run. As indicated above, the county had included in its answer a denial of Morgan's averment that he had complied with the notice of claim requirements set forth in K.S.A. 2016 Supp. 12-105b(d) and it had also asserted subject matter jurisdiction as a defense. Moreover, as this court has previously found, "[e]quitable arguments and doctrines, no matter how compelling, are insufficient by themselves to confer subject matter jurisdiction upon a court." *Fox v. Fox*, 50 Kan. App. 2d 62, 66, 322 P.3d 400 (2014); see

15

also *Farmers State Bank, Wathena, Kansas v. Orcutt*, No. 105,835, 2012 WL 1920329 (Kan. App. 2012) (unpublished opinion) ("[T]he doctrines of laches and waiver . . . are both equitable doctrines that do not affect the court's subject matter jurisdiction.").

Subject matter jurisdiction is vested by statute, and it establishes a court's authority to hear a particular type of action. *Pieren-Abbott v. Kansas Dept. of Revenue*, 279 Kan. 83, 92, 106 P.3d 492 (2005). As a creature of statute, the parties cannot confer subject matter jurisdiction by consent nor can they convey subject matter jurisdiction on a court by failing to object. *Kansas Bd. of Regents v. Skinner*, 267 Kan. 808, Syl. ¶ 5, 987 P.2d 1096 (1999). Thus, we do not find that the district court erred in granting judgment to Doniphan County as a matter of law based on lack of subject matter jurisdiction.

Affirmed.