NOT DESIGNATED FOR PUBLICATION

No. 117,514

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

FELIX GOMEZ,
*Appellant*,

v.

KANSAS DEPARTMENT OF REVENUE,
*Appellee*.

MEMORANDUM OPINION

Appeal from Ford District Court; SIDNEY R. THOMAS, judge. Opinion filed February 2, 2018.
Affirmed.

*Peter J. Antosh*, of Garcia & Antosh, LLP, of Dodge City, for appellant.

*John D. Shultz*, of Legal Services Bureau, Kansas Department of Revenue, for appellee.

Before POWELL, P.J., STANDRIDGE, J., and STUTZMAN, S.J.

PER CURIAM: Felix Gomez was arrested for driving under the influence of alcohol, and as a result, the Kansas Department of Revenue (KDR) suspended his driving privileges. Gomez challenged his suspension, and after an administrative hearing, the KDR affirmed the suspension. Gomez then sought judicial review in the Ford County District Court, and the district court affirmed the KDR's administrative action. After a careful review of the record on appeal, we affirm.

FACTUAL AND PROCEDURAL BACKGROUND

On February 26, 2016, Officer Chad Kelley of the Dodge City Police Department observed Gomez' vehicle fail to maintain its lane of traffic and then observed the vehicle cross over the centerline of the road. Kelley stopped Gomez; upon making contact, Kelley observed unopened bottles of alcohol on the passenger's side floorboard. Gomez admitted to consuming alcohol. Kelley also smelled alcohol coming from Gomez and observed that Gomez' eyes were glossy. Kelley administered field sobriety tests which Gomez did not successfully complete. Kelley then administered a preliminary breath test (PBT) on Gomez. Before doing so, Kelley performed a mouth check on Gomez to verify there was nothing in his mouth. Kelley then observed a 15-minute deprivation period before administering the PBT. Gomez failed the PBT, and Kelley immediately placed Gomez under arrest and handcuffed him. Kelley testified, "Once he was in handcuffs, I know he didn't take anything else into his mouth."

Kelley transported Gomez to the Dodge City Police Department where Gomez agreed to submit to a breath test on an Intoxilyzer 8000. This test requires a 20-minute deprivation period. A video of the Intoxilyzer 8000 test is in the record on appeal. Gomez remained handcuffed for the duration of the testing, and no visual or audible indications of regurgitation or belching are present for the duration of the video. Approximately 8 minutes and 40 seconds into the video, Kelley checked Gomez' mouth to "double-check" there was nothing in it. Kelley administered the test approximately 22 minutes and 57 seconds after the recording of the video began, but only 14 minutes and 17 seconds after the check of Gomez' mouth. Gomez' Intoxilyzer 8000 test result was .094—over the legal limit.

KDR suspended Gomez' driver's license. Gomez timely requested an administrative review of the suspension of his driver's license; KDR conducted a hearing

and affirmed the suspension. Gomez timely petitioned for judicial review of KDR's decision.

The district court held a trial on February 13, 2017. At trial, the State admitted into evidence the Kansas Department of Health and Environment (KDHE) protocol checklist for the admission of a test with the Intoxilyzer 8000. This protocol does not contain any requirement that the person conducting the Intoxilyzer 8000 test should check the mouth of the individual taking the test before he or she blows into the instrument. Kelley did not testify that he was required to check Gomez' mouth prior to administering the test.

The district court's February 22, 2017 journal entry held: "The plaintiff failed to meet his burden to prove that the testing procedures used were not in substantial compliance with the procedures set out by [KDHE]." The district court upheld KDR's suspension of Gomez' driving privileges.

Gomez timely appeals.

DID THE DISTRICT COURT ERR IN AFFIRMING THE SUSPENSION
OF GOMEZ' DRIVER'S LICENSE?

On appeal, Gomez argues the district court erred in upholding the suspension of his driver's license because the Intoxilyzer 8000 testing protocol was not substantially complied with.

The parties in this appeal disagree as to the correct standard of review to be applied in the case at hand. Gomez argues we are to review the district court's action for substantial competent evidence, while the State argues that a negative finding of fact standard applies. However, under either standard of review, the State argues the district

3

court was correct in its ruling. Our standard of review of a driver's license suspension is well established:

"The Kansas Judicial Review Act (KJRA) defines the scope of judicial review of state agency actions. K.S.A. 2016 Supp. 77-603(a); see *Ryser v. State*, 295 Kan. 452, 458, 284 P.3d 337 (2012). Appeals from administrative suspensions of driver's licenses are subject to review under the KJRA except that appeals to the district court are de novo. K.S.A. 2016 Supp. 8-259(a); see *Moser v. Kansas Dept. of Revenue*, 289 Kan. 513, 516, 213 P.3d 1061 (2009). On appeal, the burden of proving the invalidity of the agency action rests on the party asserting such invalidity. K.S.A. 2016 Supp. 77-621(a)(1).

"We review a district court's ruling in a driver's license suspension case for substantial competent evidence. *Swank v. Kansas Dept. of Revenue*, 294 Kan. 871, 881, 281 P.3d 135 (2012); see *Mitchell v. Kansas Dept. of Revenue*, 41 Kan. App. 2d 114, 118, 200 P.3d 496 (2009). Notwithstanding the State's argument to the contrary, the negative finding standard does not apply in driver's license suspension cases reviewed under the KJRA. *Love v. Kansas Dept. of Revenue*, No. 112,135, 2015 WL 4879188, at *2 (Kan. App. 2015) (unpublished opinion), *rev. denied* 303 Kan. 1078 (2016). This is because the KJRA provides that an agency action must be supported by evidence that is substantial when viewed in light of the record as a whole. See K.S.A. 2016 Supp. 77-621(c)(7).

"Substantial competent evidence is such legal and relevant evidence as a reasonable person might accept as being sufficient to support a conclusion. *Gannon v. State*, 298 Kan. 1107, 1175, 319 P.3d 1196 (2014). In evaluating the evidence presented at trial, we do not weigh conflicting evidence nor do we evaluate the credibility of witnesses. *Hodges v. Johnson*, 288 Kan. 56, 65, 199 P.3d 1251 (2009). Whether substantial competent evidence exists is a question of law. *Redd v. Kansas Truck Center*, 291 Kan. 176, 182, 239 P.3d 66 (2010)." *Lonnberg v. Kansas Dept. of Revenue*, No. 115,957, 2017 WL 2901180, at *2 (Kan. App. 2017) (unpublished opinion).

"At a driver's license suspension administrative hearing, if the officer certifies that the person failed a breath test, the scope of the hearing is limited to whether the testing procedures used substantially complied with the procedures set out by [KDHE]." *Schoen*

4

*v. Kansas Dept. of Revenue*, 31 Kan. App. 2d 820, Syl. ¶ 4, 74 P.3d 588 (2003). Substantial compliance is defined as "'compliance in respect to the essential matters necessary to assure every reasonable objective.'" *Orr v. Heiman*, 270 Kan. 109, 113, 12 P.3d 387 (2000); *Martin v. Kansas Dept. of Revenue*, 38 Kan. App. 2d 1, 9, 163 P.3d 313 (2006). "The substantial compliance standard requires the petitioner in a driver's license suspension case to demonstrate a violation of the KDHE procedures that strikes at the purpose for the protocol and casts doubt upon the reliability of the subsequent test results. This must be determined on a case-by-case basis." *Mitchell v. Kansas Dept. of Revenue*, 41 Kan. App. 2d 114, 122-23, 200 P.3d 496, *rev. denied* 289 Kan. 1279 (2009).

Several other panels of our court have examined the relationship between mouth checks, deprivation periods, and KDHE protocols. Because the Intoxilyzer 8000 testing protocol does not include a mouth check, an officer's failure to perform a mouth check prior to the deprivation period equates to substantial compliance with the protocol. See *Muller v. Kansas. Dept. of Revenue*, No. 110,757, 2014 WL 2871407, at *6-7 (Kan. App. 2014) (unpublished opinion) (holding when Intoxilyzer protocol was silent on issue of foreign objects in subject's mouth and testimony did not indicate procedure requiring mouth check, protocol was substantially complied with when no mouth check occurred); *State v. Hosler*, No. 108,111, 2013 WL 2321191, at *2-4 (Kan. App.) (unpublished opinion), *rev. denied* 298 Kan. 1206 (2013) (holding when no evidence exists that mouth check is required such requirement is not part of protocol). However, when an officer testifies that he or she is required to check the mouth of the subject to begin a deprivation period then this requirement will be read into the KDHE protocol. If the officer failed to follow the procedure he or she testified to, then the officer did not substantially comply with the protocol. See *Shaw v. Kansas Dept. of Revenue*, No. 114,517, 2016 WL 3569948, at *4-6 (Kan. App. 2016) (unpublished opinion) (holding when officer testified that procedure of testing requires visual inspection of subject's mouth and officer did not perform mouth check, then officer did not substantially comply with protocol); *State v. Perry*, No. 93,830, 2005 WL 2076580, at *2 (Kan. App. 2005) (unpublished opinion)

(same). Therefore, resolution of this issue is entirely dependent upon the officer's testimony on the protocol for the breath test.

In the case at hand, while it is undisputed that Kelley performed a mouth check on Gomez, it is the timing of the mouth check which is at issue. If the deprivation period prior to an Intoxilyzer 8000 test only begins after the mouth check, then Gomez' second deprivation period was 14 minutes and 17 seconds—less than the required 20-minute deprivation period. Gomez argues that Kelley's testimony regarding the PBT and the Intoxilyzer 8000 procedures indicate that Kelley knew a deprivation period begins only after the officer checks the mouth of the subject.

Kelley testified about the PBT procedure he follows:

"Q. [GOMEZ' COUNSEL]: . . . Is there anything you have to do in terms of like an observation period?
"A. [KELLEY]: There's a 15-minute deprivation period.
"Q. [GOMEZ' COUNSEL]: What do you do at the start of the deprivation period?
"A. [KELLEY]: The first thing I do is check, make sure there's nothing in his mouth."

He then testified to his Intoxilyzer 8000 procedure:

"Q. [GOMEZ' COUNSEL]: Okay, and what's the procedure for taking an evidentiary breath test with the Intoxilyzer?
"A. [KELLEY]: It's another 20-minute deprivation period.
. . . .
"Q. [GOMEZ' COUNSEL]: You're not supposed to let them eat or put stuff in their mouth, right?
"A. [KELLEY]: Correct."

Kelley further testified:

> "Q. [GOMEZ' COUNSEL]: . . . [W]hat do you understand deprivation period to be then? . . . What is your role before or in conducting a deprivation period?
>
> "A. [KELLEY]: Deprive them of having anything in their mouth.
>
> "Q. [GOMEZ' COUNSEL]: Okay. Does it follow that you would want to check what's in their mouth before the start of the deprivation period?
>
> "A. [KELLEY]: I checked when I was initially doing field sobriety. Once he was in handcuffs, I know he didn't take anything else into his mouth.
>
> "Q. [GOMEZ' COUNSEL]: Okay. So why did you check at all then?
>
> "A. [KELLEY]: Because—
>
> "Q. [GOMEZ' COUNSEL]: We're suggesting that the video shows that at a point about eight minutes in, you did check. So why did you check at all?
>
> "A. [KELLEY]: Just to double-check."

However, Kelley definitively testified:

> "Q. [KDR]: Nowhere on that Intoxilyzer protocol does it require you to actually check the individual's mouth, does it?
>
> "A. [KELLEY]: No, it doesn't."

The KDHE protocol states, in pertinent part: "Keep the subject in your immediate presence and deprive the subject of alcohol for 20 minutes immediately preceding the breath test." The protocol does not contain any requirement that the deprivation period begins only after the test administrator checks the subject's mouth, and Kelley testified as such. It simply requires the subject be deprived of alcohol for 20 minutes immediately preceding the breath test.

Here, Gomez was placed in handcuffs immediately after he failed the PBT, and he remained in these handcuffs until after the administration of the Intoxilyzer 8000 test. Based on a review of the video, there is no indication that Gomez burped, regurgitated, or

7

took anything into his mouth during the period before Kelley administered the Intoxilyzer 8000 test. Additionally, Kelley testified, "Once he was in handcuffs, I know he didn't take anything else into his mouth." Like in *Muller*, 2014 WL 2871407, at *6-7, and *Hosler*, 2013 WL 2321191, at *2-4, there is no support in the record on appeal that a mouth check is required under the protocol of the Intoxilyzer 8000 at the beginning of the deprivation period. Kelley testified that a mouth check is not part of the KDHE protocol, and he only checked Gomez' mouth before the Intoxilyzer 8000 test to "double-check." Finally, and perhaps most significantly, Gomez did not indicate, nor does he argue now, that he did in fact burp, regurgitate, or otherwise take anything into his mouth during this period. Under these facts, where there has not been testimony that a mouth check was part of the testing protocol or procedures for the Intoxilyzer 8000, there was substantial competent evidence to support a finding that Kelley substantially complied with the KDHE protocol. The district court did not err in upholding KDR's suspension of Gomez' driver's license.

Affirmed.